**Simon L. HOWARD, Sr., Appellant,**

v.

**ST. LOUIS-SAN FRANCISCO RAILWAY CO., a Corporation, Brotherhood of Railroad Trainmen, an Unincorporated Association, and C. O. Carnahan, General Chairman, Brotherhood of Railroad Trainmen, Appellees.**

**No. 15007.**

United States Court of Appeals
Eighth Circuit.

Sept. 14, 1954.

Rehearing Denied Oct. 8, 1954.

Victor Packman, St. Louis, Mo. (Henry D. Espy, St. Louis, Mo., and Joseph C. Waddy, Washington, D. C., with him on the brief), for appellant.

A. J. Baumann, St. Louis, Mo. (James L. Homire and C. H. Skinker, Jr., St. Louis, Mo., with him on the brief), for appellee St. Louis-San Francisco Ry. Co.

Charles R. Judge, St. Louis, Mo. (Dubail & Judge, St. Louis, Mo., with him on the brief), for appellees Brotherhood of Railroad Trainmen and C. O. Carnahan, General Chairman.

Before SANBORN, JOHNSEN and COLLET, Circuit Judges.

JOHNSEN, Circuit Judge.

We held in Howard v. St. Louis-San Francisco Ry. Co., 8 Cir., 191 F.2d 442, 449, that an agreement exacted from the Railway by the Brotherhood of Railroad Trainmen, requiring the carrier to get rid of its "train porters", who were Negroes, and to replace them with "brakemen", who were white men, was entitled to be enjoined from being used or given effect, except as "a consolidation of the positions and crafts of brakeman and

train porter and of the membership of the two crafts," with protection to be afforded the accrued job-and-seniority rights of the train porters in the merger, and with representation to be made of them in their assimilated status by the Brotherhood as the previously chosen bargaining representative of the dominant white-brakemen membership of the craft. The train porters were willing that the exacted agreement be allowed to have this effect, which we regarded as the only valid legal effect of which it was at all capable, and which effect we deemed it proper to accord it as a matter of law, in view of the train porters' consent thereto and of the insistence of the Brotherhood and the Railway that a contract legally could be made to abolish the position and craft as such.

Thus, we reversed a judgment of the District Court, Howard v. Thompson, 72 F.Supp. 695, which had denied the train porters injunctive relief against the exacted agreement and the action taken by the Railway thereunder—that court having taken the view that the right of the train porters to do the work in which they had been engaged was a question for the National Railroad Adjustment Board, and that their claim to be entitled to constitute members of the brakemen's craft was a question for the National Mediation Board. We directed the District Court to enter an order "enjoining the Railway and the Brotherhood from using the agreement for any other purpose and from giving it any other effect" than that which has just been set out above herein. See 191 F.2d at page 449.

The Brotherhood petitioned the Supreme Court for certiorari, and the writ was granted. Brotherhood of Railroad Trainmen v. Howard, 342 U.S. 940, 72 S. Ct. 551, 96 L.Ed. 699. On hearing and and submission on the merits, the Supreme Court wrote an opinion, Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283, holding that the use made by the Brotherhood of its position and power, as a bargaining representative under the Railway Labor Act, 45 U.S.C.A. § 151 et seq., to effect a racial discrimination, was a breach of its statutory duty and so unlawful.

The Court said: "While different in some respects, the basic pattern of racial discrimination in this case is much the same as that we had to consider in Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173. * * * As previously noted, these train porters are threatened with loss of their jobs because they are not white and for no other reason. * * * The Federal Act * * * prohibits bargaining agents it authorizes from using their position and power to destroy colored workers' jobs in order to bestow them on white workers. * * * The claims here cannot be resolved by interpretation of a bargaining agreement so as to give jurisdiction to the Adjustment Board * * *. This dispute involves the validity of the contract, not its meaning. Nor does the dispute hinge on the proper craft classification of the porters so as to call for settlement by the National Mediation Board * * *. For the contention here with which we agree is that the racial discrimination practiced is unlawful, whether colored employees are classified as 'train porters,' 'brakemen,' or something else." 343 U.S. at pages 772, 773, 774, 72 S.Ct. at page 1024.

To this, the Court added the following conclusion and direction: "We agree with the Court of Appeals that the District Court had jurisdiction to protect these workers from the racial discrimination practiced against them. On remand, the District Court should permanently enjoin the Railroad and the Brotherhood from use of the contract or any other similar discriminatory bargaining device to oust the train porters from their jobs. In fashioning its decree the District Court is left free to consider what provisions are necessary to afford these employees full protection from future discriminatory practices of the Brotherhood. However, in drawing its decree, the District Court must bear in mind that *disputed* questions of reclassification

692

of the craft of 'train porters' are committed by the Railway Labor Act to the National Mediation Board." 343 U.S. at pages 774 and 775, 72 S.Ct. at page 1026.

The formal order, which the opinion directed to be entered of record, and which the mandate contained in practically the identical language thereof, was that "The judgment of the Court of Appeals reversing that of the District Court is affirmed, and the cause is remanded to the District Court for further proceedings in accordance with this opinion." 343 U.S. at page 775, 72 S.Ct. at page 1026.

After the case had been thus remanded to the District Court, that court entered the following decree:

"(1) The judgment of this Court entered herein on August 18, 1948, in so far as it determined that this Court was without jurisdiction of plaintiff's claim herein and stayed further proceedings herein to allow plaintiff to seek a determination of his claim before the National Railroad Adjustment Board and the National Mediation Board, is hereby vacated and for naught held.

"(2) The Brotherhood of Railroad Trainmen and the St. Louis-San Francisco Railway Company be and they are hereby permanently restrained and enjoined, jointly and severally, from using the agreement of March 7, 1946, and any other discriminatory bargaining device to oust plaintiff and those of his class similarly situated from their jobs on said railroad as train porters.

"(3) The defendant Brotherhood of Railroad Trainmen is hereby permanently restrained and enjoined from using its statutory position as collective bargaining representative under the Railway Labor Act of the craft or class of brakemen on the St. Louis-San Francisco Railway Company to discriminate against the plaintiff and his class in the performance of their duties as train porters, and particularly in the performance of any duties ordinarily classified as those pertaining to the duties or functions of brakemen on passenger trains."

The plaintiff train porter has taken an appeal here, individually and representatively, from this decree. In substance, the contention made for reversal is that the District Court erred in failing to carry out, by suitable provision against the Railway in its decree, the holding of our opinion that the exacted agreement was entitled to be accorded legal effect "as a consolidation of the two previously existing but virtually identical positions and crafts, and of the membership of both". 191 F.2d at page 448. The argument is that, since the Railway had not petitioned for certiorari,[1] this holding was left standing adjudicatedly against it, and that the District Court therefore should have required it to give the agreement that effect and operation in the train porters' favor.

We are unable to agree that, as the situation as a whole has been left by the opinion of the Supreme Court, it was error for the District Court to refuse to impose such a requirement upon the Railway in relation to our previous holding. In the first place, it must be noted that the Supreme Court regarded the portion of our opinion, upon which the train porters rely, as not having been intended to accord the agreement any required legal effect of craft consolidation but a permissive one only, if all the parties were willing to allow it to have such an operation.

Thus, the Supreme Court said that our opinion had "held that the agreement, as construed and acted upon by the Railroad, was an 'attempted predatory appropriation' of the 'train porters'' jobs, and was to this extent illegal and unenforceable", but that we had "permitted the Railroad and the Brotherhood to treat the contract as valid on condition

1. The Railway, though it had not itself petitioned for certiorari, had appeared and filed brief in the proceedings had in the Supreme Court.

that the Railroad would recognize the colored 'train porters' as members of the craft of 'brakemen' and that the Brotherhood would fairly represent them as such." 343 U.S. at page 772, 72 S.Ct. at page 1024. This interpretation by the Supreme Court of the language of our opinion, made in the case itself, necessarily had the effect of imparting that limitative meaning to it in the situation.

But beyond this, as has been previously indicated, the Supreme Court also expressly declared that "in drawing its decree, the District Court must bear in mind that *disputed* questions of reclassification of the craft of 'train porters' are committed by the Railway Labor Act to the National Mediation Board." 343 U.S. at page 775, 72 S.Ct. at page 1026. It is not contended here, nor could it be, that the District Court would have any right under the opinion of the Supreme Court to enter such a provision against the Brotherhood and the brakemen as is being sought against the Railway. But without a recognition by both the Brotherhood and the Railway, either voluntary or legally compelled, of craft consolidation having occurred, any decreeing of an obligation against the Railway, to give the agreement such an effect, would necessarily give rise to controverted right on the part of the Railway, as against the contract of the brakemen, to impinge upon their craft status, with its incidents of seniority, etc., and so could hardly, in terms of the Railway Labor Act and in the language of the Supreme Court's opinion, be regarded as being anything else, for purposes of the present situation, than an intrusion by the court into the forbidden domain of "*disputed* questions of reclassification of the craft of 'train porters'."

There is accordingly no basis on which to contend that it was error for the District Court, because of our previous opinion and decision, to refuse to include such a provision in its decree as the train porters sought. And what has been said as to the lack of any error in the decree in relation to our previous opinion and decision, makes unnecessary any consideration of the technical aspects of the arguments made and the motions filed by the parties. The motion of the train porters to have a mandate issued to the District Court on our previous opinion and decision, and the motion of the Brotherhood to have the appeal dismissed for lack of any jurisdiction on our part to review the decree of the District Court, because of mandate having been issued and remand made by the Supreme Court direct to that court, are accordingly both denied, and the judgment of the District Court is affirmed.

Affirmed.