Simon L. HOWARD, Appellant,

v.

ST. LOUIS–SAN FRANCISCO RAILWAY
COMPANY, a Corporation,

and

Brotherhood of Railway Trainmen, an Un-
incorporated Association, Appellees.

No. 18146.

United States Court of Appeals
Eighth Circuit.

June 17, 1966.

Barbara A. Morris, New York City, for appellant. Robert L. Carter, New York City, Clyde Cahill, Jr., St. Louis, Mo., and Frank D. Reeves, Washington, D. C., with her on the brief.

Charles R. Judge, of Dubail, Judge & Kilker, St. Louis, Mo., for appellee Brotherhood of Railroad Trainmen. McGlynn & McGlynn, E. St. Louis, Ill., with him on the brief.

Paul R. Moody, St. Louis, Mo., for appellee St. Louis-San Francisco Railway Co. Ernest D. Grinnell, Jr., St. Louis, Mo., with him on the brief.

Before MATTHES, MEHAFFY and GIBSON, Circuit Judges.

MATTHES, Circuit Judge.

Simon L. Howard, a Negro, brought this class action on behalf of all individuals comprising the craft or class of train porters, (approximately 35, all Negroes), against their employer, St. Louis-San Francisco Railway Company, and the Brotherhood of Railway Trainmen. The latter has been certified, pursuant to election, by the National Mediation Board as the statutory bargaining representative for the craft or class of brakemen, among others.

The complaint alleged a cause of action under the Railway Labor Act, 45 U.S.C.A. § 151 et seq.; jurisdiction pursuant to Title 28 U.S.C.A. §§ 1331, 1337; and seeks a declaratory judgment pursuant to Title 28 U.S.C.A. §§ 2201 and 2202.

Hereafter we shall refer to Howard and the class he represents, collectively, as appellant; St. Louis-San Francisco Railway Co. and the Brotherhood of Railway Trainmen, severally as Frisco and Brotherhood, and collectively as appellees; National Mediation Board as Mediation Board.

The sum and substance of appellant's amended complaint is that although he has traditionally performed the duties of a brakeman, appellees have refused to classify him as such and to readjust his status along functional and operational lines, and have refused to establish and preserve his job assignment and seniority "as brakeman"; that he has been relegated to the class of "train porter" solely because of his race; and that through conspiratorial action, appellees have discriminated against appellant to his damage. In addition, Paragraph 14 of the amended complaint alleged that in violation of the Railway Labor Act appellees had agreed to replace full passenger crews with freight crews on troop trains, and thereby terminate the services of Negro train porters. Paragraph 15 alleged other unlawful practices by appellees throughout the past 10 years. Appellant sought: (1) declaration of rights, (2) injunctive relief, and (3) damages.

Appellees filed motions for summary judgment. In its first memorandum opinion, unreported, the District Court held it had no jurisdiction to reclassify the craft of train porters. Being of the opinion, however, that Paragraphs 14 and 15 of the amended complaint stated grounds upon which relief could be granted, the court denied the motions for summary judgment. Extensive discovery proceedings followed which included interrogatories, requests for admissions, the depositions of 38 train porters by appellees and of three Frisco and two Brotherhood officials by appellant. A stipulation of facts was also filed.

Appellees again filed motions for summary judgment. The District Court, after due consideration, failed to find hostile racial discrimination, granted the motions and entered judgment, dismissing the complaint. The court's supporting memorandum opinion is reported at 244 F.Supp. 1008.

The principal question for our determination is whether, on this record, the District Court had jurisdiction and power, to require by appropriate order, that all Negro employees of Frisco, now in the craft or class of train porter, be placed in the craft or class of brakemen. We hold that the District Court's conclusion on this issue was correct.

The case comes to us on a voluminous record. We also take judicial notice of extensive prior litigation between these same parties, initiated by appellant in the United States District Court for the Eastern District of Missouri in 1946, which progressed by appeal to this court, by certiorari to Supreme Court, by remand to District Court, and by appeal again to this court, see Howard v. Thompson, 72 F.Supp. 695 (1947); Howard v. St. Louis-San Francisco Ry. Co., 191 F.2d 442 (8 Cir. 1951); Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283 (1952); Howard v. St. Louis-San Francisco Railway Co., 215 F.2d 690 (8 Cir. 1954). The foregoing opinions present the factual history of train porters and the essence of the duties performed by them.

The craft or class of train porters has been recognized historically since December, 1918. Train porters have been organized and represented for collective bargaining purposes since 1921. They are now represented by the Association of Railway Trainmen and Locomotive Firemen by reason of election and certification by the Mediation Board. The contract between that association and Frisco was entered into on October 7, 1955 and apparently is still in effect.[1] Train porters and brakemen have never been represented by the same labor organization.

The job of train porter has been available only to Negroes. Although a substantial majority of brakemen are white, it is a fact that Negroes have been employed as brakemen.[2] Indeed, Simon L. Howard was employed as a brakeman by Frisco in 1914. He was transferred to the job of train porter, at his request, because of an injury.

The gist of appellant's argument is that the denomination and classification "train porter" is applied only to Negroes; that it is therefore a racial classification, and the federal courts have jurisdiction to grant a remedy. It is further argued that racial discrimination may not be practiced under the aegis of the Railway Labor Act. Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); Graham v. Brotherhood of Locomotive Firemen, 338 U.S. 232, 70 S.Ct. 14, 94 L.Ed. 22 (1949); Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944); Tunstall v. Brotherhood of Locomotive Firemen, etc., 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187 (1944); Dillard v. Chesapeake & O. Ry. Co., 199 F.2d 948 (4 Cir. 1952); Rolax v. Atlantic Coast Line R. Co., 186 F.2d 473 (4 Cir. 1951) are cited and relied upon.

*Steele*, supra, the principal case relied upon by appellant, involved racial discrimination. Steele, a Negro, was a locomotive fireman but not a member of the Brotheroood of Locomotive Firemen and Enginemen, the exclusive bargaining representative of the entire craft of firemen. The Supreme Court held that the language of the Railway Labor Act imposed a duty on the bargaining representative of the craft to exercise, without hostile discrimination, the power conferred upon it by the Act on behalf of all firemen irrespective of whether they were union members or not. Failure to exercise this duty, was held to give rise to a cause of action under the Act. In our case, the Brotherhood has never represented the train porters. This craft has selected its own bargaining repre-

---

1. The term of the agreement recites that "[t]his agreement shall be effective October 1st, 1955, and shall continue in effect until it is changed or modified in accordance with the provisions of the Railway Labor Act, as amended". The record is void of any such change or modification.

2. The affidavit of the General Secretary and Treasurer of Brotherhood shows the qualifications for membership; that many Negroes are members of the Brotherhood, having been admitted to membership of various local lodges within whose jurisdiction they are respectively employed; "That he is unable to state the number of Negro members of the Brotherhood of Railway Trainmen for the reason that the records of individual members maintained by the Brotherhood contain no designation or indication as to race".

sentative and such representative has been certified by the Mediation Board, in accordance with the provisions of the Act.

We deem it unnecessary to discuss the other cases relied upon by appellant. They are clearly distinguishable and are not dispositive of the jurisdictional question.

■ The courts have, without exception, held that under the Railway Labor Act *only* the Mediation Board has the power to make craft or class determinations. Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283 (1952); Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943); Brotherhood of Railway & S. S. Clerks, etc. v. United Air Lines, 325 F.2d 576 (6 Cir. 1963); UNA Chapter, Flight Eng. I. Ass'n, etc. v. National Mediation Bd., 111 U.S.App. D.C. 121, 294 F.2d 905 (1961), cert. den. 368 U.S. 956, 82 S.Ct. 394, 7 L.Ed. 2d 388; Order of Railway Cond. & Brake. v. Switchmen's Union, 269 F.2d 726 (5 Cir. 1959), cert. den. 361 U.S. 899, 80 S.Ct. 206, 4 L.Ed.2d 155; Hester v. Brotherhood of Railroad Trainmen, 206 F.2d 279 (8 Cir. 1953).

In *Howard,* supra, the Brotherhood sought to invade the positional field of train porters, and take over their jobs. Racial discrimination was an important factor in the case. In refusing to sanction the agreement between Frisco and Brotherhood, we stated, in part, 191 F.2d at p. 445: "The agreement reached out to take over, by forced action, * * * the entire positional field of another craft, with the * * * inevitable, and so legally intended, result that that 40-year established and recognized separate craft would be pushed off the Railway and cease to have existence".

On certiorari the Supreme Court stated "the basic pattern of racial discrimination in this case is much the same as that we had to consider in Steele v. Louisville & N. R. Co., 323 U.S. 192 [65 S.Ct. 226, 89 L.Ed. 173] * * *.

As previously noted, these train porters are threatened with loss of their jobs because they are not white and for no other reason. The job they did hold under its old name would be abolished by the agreement; their color alone would disqualify them for the old job under its new name", 343 U.S. at pp. 772, 773, 72 S.Ct. at pp. 1024, 1025. In remanding the case to the District Court, the Supreme Court was careful to point out:

"Bargaining agents who enjoy the advantages of the Railway Labor Act's provisions must execute their trust without lawless invasions of the rights of other workers. We agree with the Court of Appeals that the District Court had jurisdiction to protect these workers from the racial discrimination practiced against them. On remand, the District Court should permanently enjoin the Railroad and the Brotherhood from use of the contract or any other similar discriminatory bargaining device to oust the train porters from their jobs. In fashioning its decree the District Court is left free to consider what provisions are necessary to afford these employees full protection from future discriminatory practices of the Brotherhood. However, in drawing its decree, the District Court must bear in mind that *disputed* questions of reclassification of the craft of 'train porters' are committed by the Railway Labor Act to the National Mediation Board. Switchmen's Union v. National Mediation Board, supra." Id. at pp. 774, 775, 72 S.Ct. at p. 1026.

Pursuant to the mandate of the Supreme Court, the District Court entered a decree permanently enjoining Brotherhood and Frisco from using the agreement of March 7, 1946 "and any other discriminatory bargaining device to oust plaintiff and * * * his class * * * from their jobs on said railroad as train porters". The Brotherhood was also permanently enjoined from using the statutory position as collective bargaining representative of the craft or class of brakemen on the Frisco "to discriminate against the plaintiff and his class in the

performance of their duties as train porters, and particularly in the performance of any duties ordinarily classified as those pertaining to the duties or functions of brakemen on passenger trains".

The train porters were dissatisfied and appealed. Their position was that in our first opinion, 191 F.2d 442, we had held that the agreement effected a consolidation of the two previously existing but virtually identical positions and crafts and of the membership of both, and that the court had erred in failing to so decree. In refusing to accept this theory, we stated that inclusion of such a provision in the decree, would constitute "an intrusion by the court into the forbidden domain of '*disputed* questions of reclassification of the craft of "train porters".'", 215 F.2d at p. 693.

We regard the foregoing pronouncements of the Supreme Court and this court as dispositive of the right and power of courts to engage in the process of classifying of different crafts within the railroad industry. That matter has been committed by the Railway Labor Act to the Mediation Board.

The fact is appellant has not properly invoked the services of the Mediation Board, and has not instituted proceedings under Section 2, Ninth, of the Railway Labor Act. Under date of January 8, 1953, a lawyer who represented Howard and his class in the prior litigation, communicated by letter with Mediation Board. The letter reviewed at length the factors which the lawyer regarded as forming a premise for reclassification. Specific recognition was made of the impact of the Supreme Court's holding that the disputed questions of reclassification are committed to the Mediation Board. The secretary of the Mediation Board responded to the communication and concluded his reply with this statement:

"It will therefore be seen that the Board is not in position to make a ruling on the question of a proper classification of porter-brakemen employed by the St. Louis-San Francisco Railway Company *in the absence of appropriate application for its services under Section 2, Ninth, of the Railway Labor Act*". (Emphasis Supplied).

As we read the record, the January 8, 1953 letter constitutes the sole effort made by appellant to invoke the services of the Mediation Board. This being the situation, there is no factual foundation for the suggestion that the Mediation Board has denied jurisdiction to act. The question whether judicial power may ever be exerted to require the Mediation Board to exercise the duty imposed upon it under Section 2, Ninth, (a question reserved in General Committee of Adjustment of Broth. of Locomotive Engineers for Missouri-Kansas-Texas R. R. v. Missouri-Kansas-Texas R. Co., 320 U.S. 323, 336, f. n. 12, 64 S.Ct. 146, 88 L.Ed. 76 (1943), was resolved in Brotherhood of Railway & S. S. Clerks, etc. v. Employees Assn., 380 U.S. 650, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965). In that case, the Supreme Court reiterated that the Railway Labor Act precludes judicial review of the Mediation Board's certification of a collective bargaining representative, but that the Board's action is reviewable only to the extent of the question of the board's performance of its statutory duty.

We have every reason to believe that the Mediation Board, upon proper petition, would exercise its jurisdiction and competently determine any dispute between appellant and the Brotherhood.

We are aware that the attrition of railway passenger business has had an economic impact on train porters. The membership of this craft has declined and the jobs of those remaining are in jeopardy. But other crafts in the railroad industry have experienced a similar fate. It is common knowledge that dieselized power which permits longer and heavier freight trains, the inroads of truck transportation, and, more recently, Arbitration Award 282, resulting from Public Law 88–108, 77 Stat. 132, 45 U.S.C.A. § 157, note, have had the effect of eliminating brakemen assignments in freight and passenger service. Thus, it

would appear that the reclassification of the craft of "train porter" to the craft of "brakemen" could result in further job losses by brakemen. But since the courts are prohibited from intruding into the "forbidden domain of disputed questions of reclassification" of crafts of the industry, we refrain from considering the economic effect that reclassification might have upon brakemen and train porters.

As we have hereinabove indicated, appellant also sought relief from alleged practices in the handling of troop trains (Paragraph 14 of amended complaint). He alleged that "defendants have agreed to replace full passenger crews, with freight crews on troop trains, thereby terminating the services of Negro 'train porters' who are restricted to service on passenger trains. * * * By the aforesaid acts, defendants have violated their statutory duties under the Railway Labor Act". In Paragraph 15 appellant alleged that on three specified dates in March, 1962, on March 23, 1960, and on other dates throughout the past 10 years, Frisco, with acquiescence and conspiratorial participation of Brotherhood, assigned white brakemen to duties usually performed by train porters; that appellees had thereby abrogated property and seniority rights of train porters. We noted at the outset that Paragraphs 14 and 15 precipitated discovery proceedings. Seemingly, all parties were afforded adequate opportunity to fully explore the factual bases for the claims.

Appellant's brief in this court, has been of little assistance. Instead of pin-pointing the claimed errors of the District Court, appellant has approached the Paragraph 14 and 15 claims in vague generalities, and has cited abstract principles of law without demonstrating their applicability to the questions at hand. We have nonetheless examined the pleaded claims in the light in which they were apparently presented to the court below.

The troop train incidents occurred prior to the first Howard litigation. Appellant concedes as much in his brief. The change over whereby passenger crews were replaced by pool freight crews, having occurred in April, 1946, was a matter that could have been litigated in the prior Howard case. Indeed, this record shows evidence establishing the change over was introduced in that case. Evidently Howard and the other train porters did not, at that time, consider the troop train incidents of sufficient importance to require action by the courts. Examination of the complaint filed in the District Court, and the briefs filed in this court, reveals that the present controversy was not a pleaded issue, was not drawn to the attention of this court, and no relief was sought from the presently claimed invasion of the rights of the train porters. Although we do not impugn the good faith or motives of appellant, we are unable to attach any validity to the belated attempt to seek redress from the asserted wrongful acts.

The last contract between Frisco and Brotherhood, effective September, 1950, provides that passenger crews are to be replaced with freight crews on troop trains. The extent, if any, to which freight crews have handled troop trains pursuant to the 1950 contract, is not clear. The record does demonstrate, however, that the agreement to use pool freight crews was not intended to displace Negro train porters. The District Court so found. Page 1014 of 244 F. Supp.

If we were to assume that the replacing of passenger crews by freight crews resulted from discrimination, an assumption not warranted by this record, the question would remain whether, in view of the existing injunction, appellant would be entitled to the relief he seeks in this action. Under the decree entered in the prior Howard litigation, Frisco and Brotherhood are permanently enjoined from using any discriminatory bargaining device to oust members of the class or craft of train porters from their jobs on the railroad. The general rule is that a party who obtains a permanent injunction cannot, while that decree is in full force, have a standing in

court to obtain a second decree for the same relief, absent a showing that the first decree was obtained by collusion, and was therefore a fraud on the court. 28 Am.Jur., Injunctions, § 320; 43 C.J.S. Injunctions § 27.

The facts in regard to the incidents complained of in Paragraph 15 of the complaint are fully and accurately set forth in the District Court's opinion. Page 1014 of 244 F.Supp. We adopt the court's factual statement, and concur in its considered and soundly reasoned disposition of this issue.

The record fails to establish a pattern of discrimination, or collusive action between Frisco and Brotherhood. The few isolated incidents complained of involved emergency situations requiring the exercise of on-the-spot managerial discretion. The testimony of some of the train porters establish that the assignments in question resulted from cancellation of runs, or make up of emergency crews necessitated by train wrecks.

Section 3, First (i) of the Railway Labor Act, (45 U.S.C.A. § 153, First (i)) provides:

"The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on June 21, 1934, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes."

In discussing the nature of disputes between railway companies and employees, dealing with the rights of the parties, the Supreme Court in Elgin, J. & E. R. Co. v. Burley, 325 U.S. 711, 723, 724, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886, stated:

"The second class, however, contemplates the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one. The dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case. In the latter event the claim is founded upon some incident of the employment relation, or asserted one, independent of those covered by the collective agreement, e. g., claims on account of personal injuries. In either case the claim is to rights accrued, not merely to have new ones created for the future.

In general the difference is between what are regarded traditionally as the major and the minor disputes of the railway labor world. The former present the large issues about which strikes ordinarily arise with the consequent interruptions of traffic the Act sought to avoid. Because they more often involve those consequences and because they seek to create rather than to enforce contractual rights, they have been left for settlement entirely to the processes of noncompulsory adjustment.

The so-called minor disputes, on the other hand, involving grievances, affect the smaller differences which inevitably appear in the carrying out of major agreements and policies or arise incidentally in the course of an employment. * * * Because of their comparatively minor character and the general improbability of their causing interruption of peaceful relations and of traffic, the 1934 Act sets them apart from the major disputes and provides for very different treatment."

See also St. Louis, S. F. & T. Ry. Co. v. Railroad Yardmasters of America, 328 F.2d 749 (5 Cir. 1964) cert. den. 377 U.S. 980, 84 S.Ct. 1886, 12 L.Ed.2d 748.

 Beyond doubt the Paragraph 15 complaints are "minor" disputes within the meaning of the Act. This being so the train porters were required, as a prerequisite to relief in the federal courts, to pursue their remedies in accordance with the procedures embodied in their labor agreement, and the provisions of the Railway Labor Act. We agree with Frisco's suggestion that "[i]f Appellant and other train porters had been denied a work right on any occasion, they would have possessed the right to 'time-slip' this Appellee, and Frisco could have no control over their proceeding in this manner." Brotherhood of Locomotive Engrs. v. Louisville & N. R. Co., 373 U.S. 33, 38, 83 S.Ct. 1059, 1062, 10 L.Ed.2d 172 (1963), holding that "[t]he several decisions of this Court interpreting § 3 First have made it clear that this statutory grievance procedure is a mandatory, exclusive, and comprehensive system for resolving grievance disputes. The right of one party to place the disputed issue before the Adjustment Board, with or without the consent of the other, has been firmly established."

 None of the train porters ever progressed a timely claim to the Adjustment Board, or pursued any contractual or statutory remedies. Having failed to exhaust their contractual and administrative remedies, appellant is precluded from resorting to the federal courts for resolution of the Paragraph 15 grievances. Neal v. System Board of Adjustment, 348 F.2d 722 (8 Cir. 1965); cf. Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965).

We have pondered all of the contentions and arguments of appellant, and are satisfied that no rational basis exists for disturbing the judgment appealed from. Accordingly, we affirm.