414 F.2d 73
 John W. NORMAN, William McClendon, Ardes Hervey, William Fairchild, Oscar T. Kennedy, L. L. Royston, James Lane, Freddie Wroten, J. W. Jones and L. A. Evans, Appellants,
v.
MISSOURI PACIFIC RAILROAD, a Corporation, Appellee.
 No. 19433.
 United States Court of Appeals Eighth Circuit.
 July 16, 1969.
 
 Robert L. Carter, Barbara A. Morris, New York City, George Howard Jr., Pine Bluff, Ark., for appellants.
 Herschel H. Friday, Little Rock, Ark., for appellee, W. J. Smith and G. Ross Smith, Little Rock, Ark., on the brief.
 David R. Cashdan, Atty., Equal Employment Opportunity Commission, Washington, D. C., for amicus curiae, Daniel Steiner, Gen. Counsel, Washington, D. C., and Russell Specter, Asst. Gen. Counsel, on the brief.
 Before BLACKMUN, GIBSON and BRIGHT, Circuit Judges.
 FLOYD R. GIBSON, Circuit Judge.
 
 
 1
 This case represents another chapter in the long arduous litigation of the train porters against the railroads, and at times against railroad unions, in an attempt to preserve the train porters' position against adverse changes in the operation of passenger trains and predatory raids by their alleged white counterparts, the railway brakemen. The plaintiffs in this case are Negro employees of the defendant Missouri Pacific Railroad serving in the capacity of train porters.[1]
 
 
 2
 Plaintiffs allege violation of Title VII of the Civil Rights Act of 1964, 42 U.S. C. § 2000e et seq. by the defendant Railroad in classifying them as train porters because of their Negro race and allege that by reason of such classification they are denied equal employment opportunities, compensation and advancement as compared with their alleged white counterparts, the brakemen. Plaintiffs contend they are tested for and perform the same functions as white brakemen employed by the Railroad and that the class or craft of "train porter" represents an unlawful racial classification set up historically, and presently operating, to discriminte against them. They seek to enjoin the Railroad from maintaining the alleged unlawful racial classification, practice, custom and usage of limiting and interfering with their rights to equal employment opportunities secured by Title VII of the Civil Rights Act of 1964 and seek attorneys' fees and other unspecified relief.[2]
 
 
 3
 The District Court sustained a motion to dismiss the complaint for lack of jurisdiction.[3]
 
 
 4
 The trial court viewed the issue as a disputed question of reclassification of the craft of train porters into or with the craft of brakemen and held in view of the decisions in Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283 (1952); Howard v. St. Louis-San Francisco Railway Co., 361 F.2d 905 (8 Cir.1966), cert. denied 385 U.S. 986, 87 S.Ct. 598, 17 L.Ed.2d 448 (1966); UNA Chapter Flight Engineers v. National Mediation Board, 111 U.S.App.D.C. 121, 294 F.2d 905 (1961), cert. denied 368 U.S. 956, 82 S.Ct. 394, 7 L.Ed.2d 388 (1962), and Nunn v. Missouri Pacific Railroad Co., 248 F.Supp. 304 (E.D.Mo.1966), that only the National Mediation Board under the Railway Labor Act had jurisdiction over the matters alleged in the complaint and that Title VII of the 1964 Civil Rights Act did not revise or change existing law relating to the Railway Labor Act.
 
 
 5
 The trial court pointed out that the defendant Railroad was obligated to deal with the certified representative of a craft or class as provided in 45 U.S.C. § 152, Ninth and that the defendant cannot reclassify train porters as brakemen and transpose them into the brakemen's seniority roster without the concurrence of both unions and the National Mediation Board. It viewed the difference and disparity in employment conditions of train porters and brakemen as resulting from the fact that they are represented by different bargaining agents and are protected by different collective-bargaining agreements. The trial court did not find, but intimated, there was a defect in parties under Rule 19, Fed.R.Civ.P.
 
 
 6
 The litigation between the train porters and the railroads and the unions or brotherhoods representing the brakemen commenced in 1946 in Howard v. Thompson, 72 F.Supp. 695 (E.D.Mo. 1947), was appealed in Howard v. St. Louis-San Francisco Railway Co., 191 F.2d 442 (8 Cir.1951), and reviewed on grant of certiorari in Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283 (1952); it was again dealt with in Howard v. St. Louis-San Francisco Railway Co., 215 F.2d 690 (8 Cir.1954); Howard v. St. Louis-San Francisco Railway Co., 361 F.2d 905 (8 Cir.1966), cert. denied 385 U.S. 986, 87 S.Ct. 598, 17 L. Ed.2d 448 (1966) and Nunn v. Missouri Pacific Railroad Co., 248 F.Supp. 304 (E.D.Mo.1966). The general controversy is outlined in the above cases and we will rely upon the factual disclosure of those cases and only relate the facts necessary for a consideration of the issues presented in this appeal.
 
 
 7
 The craft of train porter has been recognized since 1918 and only Negroes have been employed as train porters. The essential work performed by train porters is the necessary braking work on the head end of passenger trains, which tasks are also performed by brakemen. The latter's scope of work is greater as the brakemen historically and jurisdictionally work on both passenger and freight trains while train porters are confined to head end braking duties on passenger trains.[4]
 
 
 8
 In Railroad Trainmen v. Howard, supra, this Court and the Supreme Court saved the train porters' position with the St. Louis-San Francisco Railway from a predatory raid of the brakemen represented by the Brotherhood of Railroad Trainmen. The white brakemen had forced the Railroad by threat of a strike to discontinue the train porters' jobs and replace them with white brakemen. The Supreme Court made two significant pronouncements: first, the Railway Labor Act prohibits brakemen's agents from destroying Negro workers' jobs in favor of white workers and the District Court had jurisdiction to protect Negro workers from racial discrimination, second, exclusive jurisdiction was not placed under the Railway Labor Act either (a) under the Railroad Adjustment Board since this was not an interpretation of a bargaining agreement or (b) under the National Mediation Board, as a question of proper craft classification.
 
 
 9
 In Howard v. St. Louis-San Francisco Railway Co., 361 F.2d 905 (8 Cir.1966), this Court denied relief to the train porters seeking as a class to be classified as brakemen with preservation of seniority rights and security in job assignments. Our holding there was twofold: (1) that only the Mediation Board had power to make class or craft determination, citing a list of cases, headed by Railroad Trainmen v. Howard, supra, and (2) that absent a change in classification the issues between the parties represented a minor dispute under the Railway Labor Act which should be determined by administrative procedures available for minor disputes under that Act with final jurisdiction resting in the Railroad Adjustment Board.
 
 
 10
 In Nunn v. Missouri Pacific Railroad Co., supra, the train porters were unsuccessful in fighting abolition of train porter positions on ten passenger trains of the Missouri Pacific Railroad. The United States District Court for the Eastern District of Missouri held that this constituted a minor dispute subject to the ultimate jurisdiction of the Railroad Adjustment Board. No appeal was taken from this decision. In Neal v. System Board of Adjustment (Missouri Pacific Railroad), 348 F.2d 722 (8 Cir. 1965) Negro employees of the Railroad working in the St. Louis terminal and represented by the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees alleged racial discrimination in the abolition of existing positions and the establishment of new positions in the terminal operation. Summary judgment against them was sustained by us for failure to exhaust administrative procedures available in the Union before seeking equitable relief against the Union or its officers in the federal courts.
 
 
 11
 Judge Johnsen in the original Howard case, 191 F.2d 442 (8 Cir.1951) attempted to resolve the dispute between the train porters and the brakemen by viewing the collective-bargaining agreement between the brakemen and the Railroad, allowing the brakemen to take over the train porters' head end braking duties, as calling for a merger of the crafts of train porter and brakeman. This would protect the displaced train porters by preserving their functional operations and seniority rights. Then under the doctrine of Steele v. Louisville & Nashville Railroad Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944) the bargaining agent for the brakemen, as the surviving craft, could not discriminate against minority groups in carrying out representational duties under the Railway Labor Act.[5] However, the Supreme Court, though affirming the original Howard decision on certiorari by holding that the racially oriented and predatory bargaining agreement forced by the Brakemen's Union on the Railroad should be enjoined, cautioned, "that disputed questions of reclassification of the craft of `train porters' are committed by the Railway Labor Act to the National Mediation Board. Switchmen's Union v. National Mediation Board, [320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61] supra." at 775 of 343 U.S. at 1026 of 72 S.Ct.
 
 
 12
 Therefore, insofar as plaintiffs might have sought relief by way of merger or reclassification of their craft, they were foreclosed from any judicial relief by the holding in Railroad Trainmen v. Howard, supra; we recognized this in Howard v. St. Louis-San Francisco Railway Co., 361 F.2d 905 (8 Cir.1966), holding that the District Court had no jurisdiction to reclassify or place the class or craft of train porter into the class or craft of brakemen, stating that jurisdiction rests in the National Mediation Board.
 
 
 13
 It appears clear, however, that even though train porters are foreclosed from judicial relief by way of merger or reclassification of craft, the plaintiffs have certain protections under the Railway Labor Act and under Title VII of the Civil Rights Act of 1964. They have job position rights under the Railway Labor Act that are protected against predatory raids and racial discrimination. Railroad Trainmen v. Howard, supra. And now there is available to the plaintiffs a broader charter of freedom from racial discrimination in employment by reason of the congressional enactment of Title VII of the Civil Rights Act of 1964. We examine the complaint to ascertain whether on its face a cause of action is stated under Title VII.
 
 
 14
 Briefly stated, the complaint alleges: "train porter" is an unlawful racial classification because, except for a period of October 1, 1920 to October 7, 1921,[6] all persons employed as train porters by the defendant were Negroes and historically brakemen have been white employees, train porters are used in and assigned exclusively to passenger train service while brakemen are assigned to and used in both passenger and freight service, promotion to conductor is not open to train porters but is to brakemen, service as train porters is substantially the same as that of brakemen (which claim is borne out by the finding in Howard that the duties are substantially the same and that 95 per cent of the train porters' functional operations parallel those of brakemen), and the compensation of the train porters is less than that of brakemen.
 
 
 15
 In considering a motion to dismiss, the well pleaded allegations of the complaint must be viewed as true and in a light most favorable to the complainants. Duff v. Kansas City Star Co., 299 F.2d 320 (8 Cir. 1962); United States v. Arkansas Power & Light Co., 207 F.2d 943 (8 Cir.1953). A motion to dismiss is not a substitute for trial on the merits and disputed issues of fact are not to be resolved in considering the motion. Publicity Building Realty Corp. v. Hannegan, 139 F.2d 583 (8 Cir.1943). In the case at bar the trial court resolved the issues on the basis of the complaint together with requests for admissions and answers thereto filed by the parties. We therefore, must view the well pleaded facts as true and find the complaint sufficient if plaintiffs are entitled to relief under any set of facts alleged. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).
 
 
 16
 The substance of plaintiffs' complaint is that the classification of plaintiffs as train porters by the Railroad is, in fact, a racial classification which deprives them of equal employment opportunities. If the classification of train porters is purely a functional one, carrying no deprivation of rights nor discrimination on the basis of race, it would be a class or craft classification under the Railway Labor Act and in grievances arising thereunder subject only to the provisions of that Act. However, the fact that racial discrimination is alleged, that only Negroes are hired for train porter positions, that Negroes are not accorded the same employment opportunities nor opportunities for advancement nor compensation equal to that enjoyed by the substantially all-white brakemen would seem to raise a justiciable cause of action in equity under § 703(a) of the Equal Employment Opportunity Act, 42 U.S.C. § 2000e-2(a), which reads as follows:
 
 
 17
 "(a) It shall be an unlawful employment practice for an employer —
 
 
 18
 "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
 
 
 19
 "(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." (emphasis supplied).
 
 
 20
 While we view the Railroad as in the middle of disputes of this type, we do not think the Railroad can violate the plain provisions set forth in Title VII of the Civil Rights Act and use as a defense the historic class or craft classifications and the requirements of the Railway Labor Act. The Railroad is not exempt from the provisions of Title VII. Exempt employers listed in § 2000e do not include railroads. Certified representatives of employees under the Railway Labor Act are subject to Title VII. It follows that railroads obligated to deal with certified representatives under the Railway Labor Act are also subject to the provisions of Title VII. We, therefore, are of the opinion that the complaint on its face properly states a cause of action under § 703 of the Civil Rights Act unless there are prohibitions contained in the Railway Labor Act that place exclusive jurisdiction over this type of complaint under the Railway Labor Act in either the Railroad Mediation Board or National Adjustment Board.
 
 
 21
 The Railroad points out that neither the plaintiffs nor the Brotherhood of Sleeping Car Porters, plaintiffs' bargaining representative, has filed any written claim or grievance with it or with the National Railroad Adjustment Board pertaining to the subject matter of this suit, nor have they filed an application to the National Mediation Board seeking a craft reclassification or otherwise attempted to secure the rights and privileges of brakemen for train porters.
 
 
 22
 The Railroad views the complaint of racial discrimination in equal employment opportunities as relating in its entirety to distinctions in the craft of train porters as compared to that of brakemen and perceives the relief sought as the acquisition by the train porters of the identical rights and privileges of brakemen. To accomplish this, in the Railroad's view, there would either have to be a change in craft classification of plaintiffs from train porters to brakemen or a consolidation of the two crafts. This issue was settled in Howard v. St. Louis-San Francisco Railway Co., 361 F.2d 905 (8 Cir. 1966) which denied relief in a class action brought by train porters seeking classification as brakemen with preservation of job assignment and seniority, the Court citing at 908 the list of authorities holding "that under the Railway Labor Act only the Mediation Board has the power to make craft or class determination."
 
 
 23
 Howard v. St. Louis -San Francisco Railway Co., 361 F.2d 905 (8 Cir.1966), was a later phase of the earlier litigation processed in Railroad Trainmen v. Howard, supra. Railroad Trainmen saved what was left of the train porters' functions[7] but foreclosed a judicial reclassification or amalgamation of the two crafts. This stopped the predatory raid on the train porters but with the accelerated demise of passenger service this was a short lived victory.
 
 
 24
 The plaintiffs contend these cases are not determinative of Title VII jurisdiction as the Courts have never examined the nature and character of the classification of train porter nor have they adjudicated its legality as a racial classification because the Railway Labor Act does not interdict racially-discriminatory employment practices by an employer; and prior to the enactment of Title VII discrimination by private parties was remediable only if executed under the aegis of or sanctioned by federal or state law. Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967); Evans v. Newton, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966); Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).[8] Secondly, plaintiffs contend that the craft classification of train porter has been accepted without question by the courts as a functionally based operative unit and no consideration has been given to the fact that a craft classification to be legally valid must have no relationship to race but must relate to functional differentiations descriptive of specific jobs, citing Order of Railway Conductors and Brakemen v. Switchmen's Union, 269 F.2d 726 (5 Cir.1959).
 
 
 25
 The plaintiffs further contend that the disparity in employment conditions and opportunities between brakemen and train porters is not due to their different representation but due to the fact that the designation of train porters was given to the Negro counterpart of white brakemen. Thus was laid the foundation upon which the unions and the railroads have erected the differences in representation and contracts, which differences the Railroad now seeks to utilize as a defense to this complaint. If the Railroad had not refused plaintiffs the same classification and opportunities for promotion as were granted to white applicants, there would not exist the dissimilarities now raised by the Railroad as impediments to the application of Title VII.
 
 
 26
 In assessing the impact of Title VII the Railroad points to a portion of the Senate debate where the question arose of how that Title might be construed to affect rights and obligations under the National Labor Relations Act and the Railway Labor Act. The Department of Justice upon request of Senator Clark of Pennsylvania submitted a memorandum stating in effect that Title VII would have no effect on seniority rights existing at the time the Act took effect and that Title VII would have no effect on the duties of any employer or labor organization under the Railway Labor Act and finally that no court order issued under Title VII could affect the status of a labor organization under the Railway Labor Act.[9]
 
 
 27
 We agree that the courts have no authority to reclassify classes or crafts under the Railway Labor Act, Railroad Trainmen v. Howard, supra, and Howard v. St. Louis-San Francisco Railway Co., 361 F.2d 905 (8 Cir.1966), and that minor grievance disputes are within the sole jurisdiction of the administrative procedures of the Railway Labor Act, with ultimate appeal to the Railroad Adjustment Board. Brotherhood of Locomotive Engineers v. Louisville & Nashville Railroad Co., 373 U.S. 33, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963); Howard v. St. Louis-San Francisco Railway Co., 361 F.2d 905 (8 Cir.1966). However, we do not think the principles applied in these cases determine the questions posed in plaintiffs' complaint, and these cases do not determine the scope of relief which the trial court may grant for violations of Title VII of the Civil Rights Act of 1964.
 
 
 28
 We examine whether plaintiffs have any practical and adequate remedy under the Railway Labor Act for their complaints of racial discrimination in employment. There is no representational dispute so as to give the National Mediation Board jurisdiction and there is no question of interpretation of a bargaining agreement or denial of contractual rights under that agreement so as to constitute a minor dispute cognizable by the Railroad Adjustment Board. The gravamen of the complaint here is that the racially oriented classification of train porters with its inherent discrimination in employment opportunities for advancement and compensation is now proscribed by § 703 of Title VII. While the amicus brief (filed by the Equal Employment Opportunity Commission) views the gravamen of the complaint as unlawful work assignments for racial reasons, we view the factual allegations of the complaint to embrace racial discriminations either by classification as train porters or by assignment of the plaintiffs to the classification of train porters whereby they are restricted to employment on passenger trains only, while white employees possessing the same qualifications are classified as brakemen and assigned to perform services on both freight and passenger trains at a higher rate of compensation, and with opportunity for advancement to the position of conductor.
 
 
 29
 The matter of racial discrimination in employment practices of the carriers is not confined exclusively to remedies contained in the Railway Labor Act.[10] In Colorado Anti-Discrimination Commission v. Continental Air Lines, Inc., 372 U.S. 714, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1963) the Supreme Court gave effect to a state anti-discrimination act holding its provisions applicable against an airline carrier regulated under the Railway Labor Act. Mr. Justice Black in speaking for the Court at 724 of 372 U.S. at 1027 of 83 S.Ct. said:
 
 
 30
 "There is even less reason to say that Congress, in passing the Railway Labor Act and making certain of its provisions applicable to air carriers, intended to bar States from protecting employees against racial discrimination. No provision in the Act even mentions discrimination in hiring. It is true that in several cases we have held that the exclusive bargaining agents authorized by the Act must not use their powers to discriminate against minority groups whom they are supposed to represent. And we have held that employers too may be enjoined from carrying out provisions of a discriminatory bargaining agreement. But the duty the Act imposes is one of fair representation and it is imposed upon the union. The employer is merely prohibited from aiding the union in breaching its duty. Nothing in the Railway Labor Act or in our cases suggests that the Act places upon an air carrier a duty to engage only in fair nondiscriminatory hiring practices. The Act has never been used for that purpose, and we cannot hold it bars Colorado's Anti-Discrimination Act."
 
 
 31
 No exclusivity can be placed in the Railway Labor Act over racial discrimination complaints in view of Mr. Justice Black's statement in Brotherhood of Railroad Trainmen v. Howard, at 774 of 343 U.S., at 1025 of 72 S.Ct.:
 
 
 32
 "* * * [C]olored workers must look to a judicial remedy to prevent the sacrifice or obliteration of their rights under the Act. For no adequate administrative remedy can be afforded by the National Railroad Adjustment or Mediation Board. * * * For the contention here with which we agree is that the racial discrimination practiced is unlawful, whether colored employees are classified as `train porters', `brakemen' or something else."
 
 
 33
 We think the earlier cases clearly demonstrate and hold that the Railway Labor Act had not preempted jurisdiction over all racially based grievances arising out of the operation of the railroads nor is it set up to determine all types of racial complaints. Railroad Trainmen v. Howard, supra. Arguably some types of racial complaints might be cognizable by the National Railroad Adjustment or Mediation Board or the courts. In a related field dealing with the National Labor Relations Act the Fifth Circuit in Local Union No. 12, United Rubber etc. Workers v. N. L. R. B., 368 F.2d 12, 24 (1966), cert. denied 389 U.S. 837, 88 S.Ct. 53, 19 L.Ed.2d 99 (1967) stated by way of dictum that an unlawful employment practice under Title VII of the Civil Rights Act of 1964 could also constitute an unfair labor practice under the National Labor Relations Act.
 
 
 34
 Title VII of the Civil Rights Act of 1964 by its express terms makes racial and other discrimination in employment and employment opportunities unlawful.[11] This statute creates additional grounds for complaints based upon racially discriminatory practices of an employer. If the Supreme Court would give effect to a state anti-discrimination statute as in Colorado Anti-Discrimination Commission v. Continental Air Lines, Inc., supra, it would likely give effect to a federal statute barring racial discrimination in employment as is set forth in Title VII § 703 of the Civil Rights Act of 1964. The Railway Labor Act is not basically a fair employment practice act nor has it been utilized as such. Its basic purpose is to foster and promote collective bargaining between employees and employers with a provision for continuity of service to the public while setting up a detailed and elaborate procedure for the resolution of major and minor disputes that occur in the operation of the railroads. On the other hand Title VII of the Civil Rights Act specifically prohibits racial and other discrimination in employment and employment opportunities.
 
 
 35
 We, therefore, do not think the plaintiffs are confined to their administrative remedies, which appear without further examination to be inadequate, under the Railway Labor Act. The enactment of Title VII provides a more extensive and broader ground for relief, specifically oriented towards the elimination of discriminatory employment practices based upon race, color, religion, sex or national origin. Title VII is cast in broad, all-inclusive terms setting up statutory rights against discrimination based inter alia upon race. The rights granted by this Title are enforceable by individuals in the District Courts, provided, of course, proper administrative channels are utilized as set forth in the act. Jenkins v. United Gas Corporation, 400 F.2d 28 (5 Cir.1968); Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5 Cir.1968). Failure to process a complaint through the administrative procedures required by the Act is ground for dismissal. Stebbins v. Nationwide Mutual Insurance Company, 382 F.2d 267 (4 Cir.1967), cert. denied 390 U.S. 910, 88 S.Ct. 836, 19 L.Ed.2d 880 (1968).
 
 
 36
 The plaintiffs here are not attempting to require that the parties bargain in good faith to implement the statutory policy embodied in the Railway Labor Act but are seeking immediate determination of practices made unlawful by Title VII. As contended by the amicus, we do not think that Congress intended to render the railroads immune from the efforts of their employees to pursue their statutory rights under Title VII. The railroads should not be allowed to escape the provisions of § 703 calling for the elimination of discriminatory employment practices by relying upon the provisions of the Railway Labor Act, any more than certified bargaining representatives may evade injunctive relief correcting invidious racial practices in disregard of their statutory responsibilities by relying on the Norris-LaGuardia Act. Virginian Railway Company v. System Federation, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937).
 
 
 37
 Railroad Trainmen v. Howard, supra, and Howard v. St. Louis-San Francisco Railway Co., 361 F.2d 905 (8 Cir.1966) are concerned with questions of jurisdictional disputes between the train porters and brakemen, while the plaintiffs here seek not a determination of bargaining representative but the termination by the Railroad of racially discriminatory practices respecting assignment, classification, terms and conditions of employment. These are statutory rights, not contractual rights embodied in collective bargaining agreements.
 
 
 38
 Surely Congress in the enactment of Title VII had in mind the granting of a new and enlarged basis for elimination of racial and other discriminations in employment. Title VII clearly is not a codification of existing law but is an enactment of a broad principle prohibiting discrimination against any individual "with respect to his compensation, terms, conditions or privileges of employment, because of * * * race, color, religion, sex, or national origin."
 
 
 39
 Although the Railroad is required under the Railway Labor Act to deal with certified bargaining representatives, that Act does not permit the Railroad to utilize unlawful employment practices violative of Title VII of the Civil Rights Act of 1964. The provisions of § 703(a) of that Act are specific and by their plain terms embrace the complaints alleged.
 
 
 40
 We are not, of course, passing upon the merits of the complaint but we do think that the complaint states a cause of action under Title VII. The plaintiffs are entitled to a hearing on the merits. The resolution of the issues raised in the complaint would encompass the history of the classification of train porters and a review thereof in light of plaintiffs' complaint that the classification is merely a racial counterpart to that of brakemen and not based on functional differentiations so as to be cognizable solely under the Railway Labor Act.
 
 
 41
 The Railroad contends the issue of whether the classification of train porter is an unlawful racial classification has been decided and the matter is now res judicata, or, at least the plaintiffs are collaterally estopped from raising it. Nunn v. Missouri Pacific Railroad Co., 248 F.Supp. 304 (E.D.Mo. 1966), was a class action brought by the train porters alleging discrimination against them in the abolition of train porter positions on ten passenger trains. The District Court there held that the abolition of these positions was not discriminatory against Negroes and that the question of whether the Railroad had the right to abolish the jobs was a minor dispute to be decided by the National Railroad Adjustment Board. No appeal was taken from this decision. In Howard v. St. Louis-San Francisco Railway Co., 361 F.2d 905 (8 Cir.1966), the train porters in a class action contended that they were relegated to the class of train porter solely because of race. We stated at 906 of 361 F.2d that the District Court "failed to find hostile racial discrimination." We viewed the issue on appeal as whether "the District Court had jurisdiction and power, to require by appropriate order, that all Negro employees of Frisco, now in the craft or class of train porter, be placed in the craft or class of brakemen." Id. Both of these cases were viewed within the context of jurisdictional disputes or craft classifications constituting grievances solely cognizable under the Railway Labor Act. The applicability of Title VII of the Civil Rights Act to the plaintiffs' complaint has not been decided by the courts. We hold, that Nunn and Howard are not a bar to the present action.
 
 
 42
 The last point raised by the Railroad is that under Rule 19, Fed.R.Civ.P., as amended, the National Mediation Board, the Brotherhood of Railroad Trainmen (as representatives of the brakemen) and the Brotherhood of Sleeping Car Porters (as representatives of the train porters), are indispensable parties that should be joined either because complete relief cannot be accorded without their presence or because their interest in the subject matter entitles them to protection by joinder.[12]
 
 
 43
 We first dispose of the ancillary contention of the Railroad that these parties could not now be joined since a prerequisite to suing in the federal court on a Title VII violation is a filing of a complaint with the Equal Employment Opportunity Commission. The proscription charged in the complaint is a continuing one and there is no impediment to the plaintiffs upon remand complying with the administrative requirements of Title VII. Plaintiffs can file a complaint before the Equal Employment Opportunity Commission embracing these alleged indispensable parties if the District Court deems any of them to be indispensable. As set forth in Local Union No. 329, International Longshoremen's Association v. South Atlantic & Gulf Coast Dist., 295 F.Supp. 599 (S.D.Tex.1968), a complaint can be filed against indispensable parties with the Equal Employment Opportunity Commission and administrative steps taken to process the complaints to the stage where the district court would have jurisdiction to order a joinder — so as to afford all parties a hearing and allow the court to fashion full relief as is warranted under the evidence.
 
 
 44
 We do not pass upon this point of joinder as it was not passed upon by the District Court. We are not sure that the other parties are to be considered as necessary but a hearing might show all or some of them to be, in which event they should be "joined if feasible" within the meaning of Rule 19, Fed.R.Civ.P. It might well be that the District Court could if warranted fashion a type of relief that would eliminate the discrimination complained of by the plaintiffs, as for example ordering equal employment opportunities for advancement to conductor positions and equal pay scale for equal services without affecting prejudicially the claimed indispensable parties. Even contract rights such as seniority may be modified by public policy or by change in the law. Ford Motor Company v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953); Rosen Utility Co-Workers Association and Morgan Sweeney v. Public Service Electric and Gas Company, 409 F.2d 775 (3 Cir. 1969). On the other hand, admittedly this is an intricate and difficult question which may require joinder of the other unions that might be affected. Since this is not a question of craft reclassification we fail to see the relevance to the suggested joinder of the National Mediation Board; also there are apparent legal difficulties in such a joinder.
 
 
 45
 On remand the issue of claimed necessary parties can be thoroughly explored by the District Court. A hearing on the merits could lead to a resolution of plaintiffs' claims. If there has been proscribed racial discrimination in employment under Title VII that matter can be corrected. If there is none, the matter should be laid at rest.
 
 
 46
 Hopefully, the unions involved and the employer could by collective bargaining resolve this matter. Attrition by retirements should leave room for both the train porters and the brakemen to continue their present employment with defendant railroad under some mutually satisfactory arrangement. This is a solution that cannot be imposed by the courts but is one that should be reached by the interested parties themselves, either voluntarily or under the aegis of the Railway Labor Act, if such be possible — again an admittedly difficult and intricate procedure.[13]
 
 
 47
 In any event the District Court can hear the claim of alleged racial discrimination under Title VII of the Civil Rights Act of 1964. The judgment of the District Court is vacated and the case remanded for proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 The plaintiffs' original complaint was set up as a class action and jurisdiction was based on 28 U.S.C. § 1343, and 42 U.S.C., §§ 1981 and 1983 in addition to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq
 The amended complaint dropped the class action and jurisdiction under §§ 1981 and 1983. These last sections were dropped inadvertently but the plaintiffs agreed at oral argument that their cause is now based on § 1343 covering civil rights actions authorized by law and this particular action is predicated on the Civil Rights Act of 1964.
 Since the filing of the complaint three of the plaintiffs have retired from service in the employment of the Railroad, three have been transferred to the craft of brakemen without seniority, but the four remaining plaintiffs are still employed as train porters and desire to press their claim alleged in the complaint. We feel this is sufficient for jurisdictional purposes if jurisdiction is otherwise established in the District Court.
 
 
 [2]
 The plaintiffs in line with the requirements of § 703 of Title VII of the Civil Rights Act of 1964 filed a complaint with the Equal Employment Opportunity Commission charging discrimination by the Railroad against them in terms of compensation, promotion and conditions of employment. The Commission found reasonable cause to believe that a violation of Title VII had occurred and unsuccessfully attempted to conciliate the matter. Failing to effect a satisfactory resolution of the complaint, this present action was filed and, of course, is heardde novo by the Court under provisions of Title VII.
 
 
 [3]
 We will not discuss the jurisdictional phase originally based on 42 U.S.C. §§ 1981 and 1983, which was predicated on a series of cases confining jurisdiction under those statutes to state action in deprivation of civil rights. Moffett v. Commerce Trust Company, 187 F.2d 242 (8 Cir. 1951); Watkins v. Oaklawn Jockey Club, 183 F.2d 440 (8 Cir. 1950); Cogswell v. Board of Levee Commissioners of Orleans Levee Dist., 142 F.2d 750 (5 Cir. 1944). Cf. Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). We will confine our discussion to the narrower issue of whether jurisdiction is stated under Title VII of the Civil Rights Act
 
 
 [4]
 Judge Johnsen, speaking for the Court, in Howard v. St. Louis-San Francisco Railway Co. at 444 of 191 F.2d said: "These aisle-sweeping and passenger-assisting tasks [of train porters], however, are simply minor and incidental, occupying only, as the record shows, approximately 5 per cent of a train porter's time." and at 443, "[t]he holders of the position [of train porters] have been required to undergo the same training and to possess the same qualification as those occupying the similar general position of brakeman."
 We may take judicial notice of prior litigation between the same parties — Howard v. St. Louis-San Francisco Railway Co., 361 F.2d 905 (8 Cir. 1966) — and we extend this right to include cases embracing train porters and other railroads to attain a historical perspective on the long-standing dispute but not to decide at this time questions of res judicata or collateral estoppel.
 
 
 [5]
 Steele v. Louisville & Nashville Railroad Co.,supra, held that the statutory duty of representation under the Railway Labor Act imposes upon the bargaining representative the obligation to "represent non-union or minority union members of the craft without hostile discrimination, fairly, impartially, and in good faith." at 204, 65 S.Ct. at 233.
 
 
 [6]
 The seniority lists of brakemen and train porters were consolidated during the period of October 1, 1920 to October 7, 1921 when the United States Government had taken over the operation of the railroads because of the emergency caused by World War I
 
 
 [7]
 As later noted in Howard v. St. Louis-San Francisco Railway Co., "We are aware that the attrition of railway passenger business has had an economic impact on train porters. The membership of the craft has declined and the jobs of those remaining are in jeopardy." of 361 F.2d at 909
 
 
 [8]
 This is at variance with the holding of Jones v. Alfred H. Mayer Company, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968), which dealt with § 1982 of the Civil Rights Act of 1866
 
 
 [9]
 The text of the memorandum by the Department of Justice in replying to the question of whether Title VII might be construed to affect rights and obligations under the Railway Labor Act is as follows:
 "* * * This is not correct. Title VII would have no effect on seniority rights existing at the time it takes effect. * * * Employers and labor organizations would simply be under a duty not to discriminate against Negroes because of their race. Any difference in treatment based on established seniority rights would not be based on race and would not be forbidden by the title.
 * * * * *
 "Second, it has been asserted that it would be possible to deny unions their representation rights under the National Labor Relations Act and the Rail-Way Labor Act. This is not correct. Nothing in Title VII or anywhere else in this bill affects rights and obligations under the NLRA and the Railway Labor Act. * * * At any rate, Title VII would have no effect on the duties of any employer or labor organization under the NLRA or under the Railway Labor Act, and these duties would continue to be enforced as they are now * * * * No court order issued under Title VII could affect the status of a labor organization under the National Labor Relations Act or the Railway Labor Act, or deny, to any union the benefits to which it is entitled under those statutes." Cong.Rec. 6986 (daily ed. April 8, 1964.)
 
 
 [10]
 The plaintiffs might be stymied in obtaining any relief under the Railway Labor Act for alleged discriminatory employment practices. 45 U.S.C. § 152, Seventh apparently recognizes the craft or class as it was originally and historically constituted, with any changes made by voluntary agreements or within the framework of the Railway Labor Act. That section reads:
 "No carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in section 156 of this title." (Emphasis supplied).
 Section 156 referred to above sets out the procedure under the Act for changing rates of pay, rules and working conditions with ultimate appeal to the Mediation Board.
 An earlier case construing § 152, Seventh, therein referred to as paragraph 7 of § 2 of the Act said:
 "But the act leaves uncertain the precise or exact meaning of the words `class or craft,' and we think obviously for the reason that it was intended by Congress to adopt the designation of class or craft as determined by the then current working agreement between the railroad and particular groups or classes of its employees.
 * * * * *
 "* * * [W]e think it is obvious that how classes are to be formed and who shall compose them are matters left to the employees themselves; and so we think that by reference to the terms of the working agreement which the employees have made, is to be found at least some evidence of who are members of the craft or class covered by that agreement." Brotherhood of Railroad Trainmen v. National Mediation Board, 66 App.D.C. 375, 88 F.2d 757, 760 (1936).
 
 
 [11]
 The purpose of Title VII is to "* * * eliminate through the utilization of formal and informal remedial procedures discrimination in employment based on race, color, religion or national origin." H.R. 914, Report of House Judiciary Committee
 
 
 [12]
 Rule 19, Fed.R.Civ.P., as amended, states in pertinent part:
 "(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. * * *
 "(b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a) (1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. * * *"
 
 
 [13]
 The Railway Labor Act, 45 U.S.C. § 151, Fifth, provides in part,
 "That no occupational classification made by order of the Interstate Commerce Commission shall be construed to define the crafts according to which railway employees may be organized by their voluntary action, * * * *"
 and under 45 U.S.C. § 152, Fourth, the majority of any craft determines the representative of the craft.
 
 
 
 48
 BRIGHT, Circuit Judge (concurring).
 
 
 49
 I agree with the majority that the complaint states a cause of action and should be reinstated. I do not subscribe, however, to those views in Judge Gibson's opinion which may tend to limit the trial court's choice of remedies in granting appropriate judicial relief.
 
 
 50
 The gravamen of the complaint is that the defendant railroad has classified the plaintiffs in a manner which deprives them of employment opportunities by reason of their race. Plaintiffs complain that their classification as train porters is a racial rather than a craft delineation. The '64 Act mandates:
 
 
 51
 "If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, * * *" 42 U.S.C.A. § 2000e-5(g).
 
 
 52
 Employment classifications which would deprive or tend to deprive any individual of employment opportunities or otherwise affect his status as an employee because of his race, color, religion, sex, or national origin are specified in the '64 Act as an unlawful employment practice by the employer. 42 U.S.C.A. § 2000e-2(a)(2).
 
 
 53
 Pursuant to Title VII of the Act, the federal courts are required to fashion appropriate and meaningful relief that will terminate proscribed discrimination in employment after attempts at voluntary resolution of a complaint relating to discriminatory employment practices have failed. Administrative provisions of the Railway Labor Act cannot be said to have so preempted the field of labor relations so as to bar relief now available under the '64 Act. Railroads are not specifically exclude from coverage under the '64 Act. 42 U.S.C.A. § 2000e-1. Furthermore, the fact that a certified representative of employees under the Railway Labor Act is specifically recognized as a "labor organization" under the '64 Civil Rights Act (42 U.S.C.A. § 2000e(e) (1)) suggest that Congress expressly recognized that railroads are potential respondents. The '64 Act's treatment of the problem of discrimination in employment would appear to supplement other acts that generally deal with labor relations in specific fields. See, Colorado Anti-Discrimination Commission v. Continental Air Lines, Inc., 372 U.S. 714, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1963). Cf., Glover v. St. Louis-San Francisco Railway Co., 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969).
 
 
 54
 The matter of the remedy to be fashioned by the trial court is not now before us. If it were, I would not consider Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283 (1952), nor our case of Howard v. St. Louis-San Francisco Railway Co., 361 F.2d 905 (8th Cir.1966), cert. denied, 385 U.S. 986, 87 S.Ct. 598, 17 L. Ed.2d 448 (1966), as controlling on the scope of the remedy. Neither case considered the interrelationship between the 1964 Civil Rights Act and the Railway Labor Act. The '64 Act, which the majority appropriately refers to as "a broader charter of freedom from discrimination in employment", authorizes the use of equitable powers of federal district courts to strike down discrimination in employment. The majority and this writer recognize the plaintiffs' right to be free from racial discrimination. If the allegations of the complaint are proven, an appropriate remedy must follow. In my view, the district court may frame its remedy without those earlier restrictions on judicial action which are now made questionable by the specific congressional action requiring equal employment opportunities.