Lorraine EVANS, Appellant,

v.

SHERATON PARK HOTEL et al.

Lorraine EVANS

v.

SHERATON PARK HOTEL et al.,
Hotel & Restaurant Employees and Bartenders International Union,
Appellant.

Nos. 73-1342, 73-1442.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 17, 1974.

Decided Sept. 12, 1974.

Robb, Circuit Judge, concurred in part and dissented in part and filed opinion.

nati, Ohio, and Samuel Levine were on the brief for appellant in No. 73–1442 and appellee, Hotel & Restaurant Employees and Bartenders International Union in No. 73–1342. Louis Ginberg, Mark H. Grunewald and Ronald I. Tish, Washington, D. C., entered appearances for appellant in No. 73–1442. Ronald I. Tish, Washington, D. C., also entered an appearance for appellee Sheraton Park Hotel.

Before McGOWAN and ROBB, Circuit Judges, and MATTHEWS,* Senior District Judge for the United States District Court for the District of Columbia.

MATTHEWS, Senior District Judge.

Appellant Lorraine Evans, a regular banquet waitress employed at the Sheraton Park Hotel (Hotel) and a member of Local 507, Hotel and Restaurant Employees and Bartenders International Union (Waitresses Local 507), brought this action under the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., against the Hotel, Waitresses Local 507, the Joint Executive Board, Hotel and Restaurant Employees and Bartenders International Union (Joint Board), the Hotel and Restaurant Employees and Bartenders International Union (International), and Local 781 Hotel and Restaurant Employees and Bartenders International Union (Waiters Local 781) seeking injunctive relief, back pay and damages.

After extensive pretrial proceedings, the District Court held that maintenance of the two sex-segregated Locals constituted a per se violation of the Civil Rights Act, 42 U.S.C. § 2000e–2(c), and, no bona fide occupational qualifications having been shown by defendants, 42 U.S.C. § 2000e–2(a) and (c) had been violated. The District Court awarded Mrs. Evans (1) $1,100 as a result of the discrimination in assignments to receptions (all defendants being jointly and severally liable); (2) $500 for harassment (against the hotel only); and (3) her costs and nominal attorney's fee of $1,000.

Whitworth Stokes, Washington, D. C., for appellant in No. 73–1342 and appellee in No. 73–1442.

Jonas Ben Katz, Cincinnati, Ohio, with whom Benjamin Gettler, Cincin-

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

In No. 73–1342, Mrs. Evans has appealed the *amounts* awarded as not being adequate or proper.

International, appellant in No. 73–1442,[1] raises three issues: (1) whether the International may be joined in a civil action brought by an aggrieved party under 42 U.S.C. § 2000e–5(e) where the International was not named as a respondent in the charge filed by the aggrieved party with the Equal Opportunity Employment Commission (EEOC); (2) whether the mere existence of Waiters Local 781 and Waitresses Local 507 within the International Union constituted a per se violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.; and (3) whether the awards of $1,100 damages and $1,000 attorney's fee for which all defendants are jointly and severally liable were clearly inadequate and an abuse of discretion by the District Court.

I

JOINDER OF INTERNATIONAL

After the original complaint was filed in District Court against the Hotel, Joint Board, and Waitresses Local 507, the Hotel filed a motion to dismiss for failure to join indispensable parties, namely, the International and Waiters Local 781. The District Court granted the motion, without prejudice, but thereafter vacated its order and allowed appellant Evans to file an amended complaint naming the two unions as parties defendant. International then proceeded with a motion for summary judgment (as to it), asserting the lack of a jurisdictional prerequisite to bringing a civil action against International in that International was not a party named or charged in the complaint filed with the EEOC. The EEOC, having been permitted earlier to participate as Amicus Curiae in this case, filed a brief opposing International's motion.

In a Memorandum and Order dated March 22, 1972, the District Court denied the motion. Having already held the International to be an indispensable party, the Court believed summary judgment to International would mean that the entire case would be stopped in its tracks. Noting that several courts had allowed additional defendants to be brought into a case despite the fact that the defendant was not named as a respondent in the administrative proceeding before the EEOC, the District Court reasoned:

> "Charges of discrimination filed with the EEOC are frequently initiated by complainants, without aid of counsel, who have no way of ascertaining the identities of all the parties who may become parties to the subsequent litigation. Even if the complainant were represented by counsel, it is unrealistic to expect that the complainant could accurately anticipate all potential parties to the subsequent litigation arising out of the claim. This is particularly true where, as in the instant case, one of the parties, the chartering International, is not highly visible, and it required court action to determine whether or not the International was an indispensable party. Title VII is a broad and humanitarian Act which seeks to encourage parties to attempt conciliation before they resort to court action but it does not seek to foreclose claimants from their legal remedies because of technical pleading requirements at the administrative stage."

Appendix, p. 14, 4 EPD PP 7727.

■ We think International, in the present case, meets the conditions of Rule 19(a), Federal Rules of Civil Procedure, which provides:

> "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief can-

---

1. None of the other defendants have appealed.

not be accorded among those already parties * * * ."

In accordance with its constitution, International had chartered Waiters Local 781 and Waitresses Local 507, and by its constitution, only International had the power to alter, suspend or terminate operation of these locals. Although neither the by-laws of Waiters Local 781 nor Waitresses Local 507 specifically prohibited membership to persons of the opposite sex, as a matter of practice and as their respective names imply, only men were admitted to Waiters Local 781 and only women were admitted to Waitresses Local 507.

Plaintiff's complaint sought general injunctive relief against sex discrimination in her employment opportunities and specific relief against maintenance of sexually segregated locals. It becomes readily apparent that specific injunctive relief against maintenance of sexually segregated locals necessitated International's presence. Further, any general injunctive relief granted to plaintiff against the Sheraton Hotel and Waitresses Local 507 only for the purpose of eliminating sex discrimination in her employment opportunities would be akin to rather ineffective symptomatic relief, leaving the root (sexually segregated locals) to continue. While money damages was an available remedy to compensate for any past illegal discrimination, we conclude that without International complete relief could not be accorded appellant Evans by way of injunctive relief necessary to prevent future discrimination.

The United States Court of Appeals for the Fifth Circuit, speaking through Judge Carswell, said in Schutten v. Shell Oil Company, 421 F.2d 869, 873 (1970):

"Subdivision (a) of Rule 19 categorizes those persons whose joinder is desirable from the standpoint of complete adjudication and elimination of relitigation. If there are no procedural or jurisdictional bars to joining such a party, Rule 19 requires that he be joined."

We turn then to the question of whether failure to charge International before the EEOC is a jurisdictional bar to its joinder.

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(e) (1970) provides that if after a charge of discrimination is filed, the EEOC is unable to achieve compliance with the Act, within a specified time "a civil action may * * * be brought against the respondent in the charge." Courts have generally interpreted this provision to mean that a charge must be filed against a party with the EEOC before court action can be commenced against the party. Mickel v. South Carolina State Employment Service, 377 F.2d 239 (4th Cir. 1967); Miller v. International Paper Co., 408 F.2d 283 (5th Cir. 1969); Bowe v. Colgate-Palmolive Company, 416 F.2d 711 (7th Cir. 1969); Cox v. United States Gypsum Company, 409 F.2d 289 (7th Cir. 1969); Marlowe v. Gen. Motors Corp., 6 FEP Cases 1083 (6th Cir. 1973); Norman v. Missouri Pacific Railroad, 414 F.2d 73 (8th Cir. 1969).[2]

2. Only in Norman v. Missouri Pacific Railroad, supra, was the question raised of joining indispensable parties—and then as an ancillary contention of the defendant Railroad at the appellate level. The Eighth Circuit did not depart from the general interpretation that a charge must be filed against a party with the EEOC before court action can be commenced against the party. But it suggested a procedure whereby indispensable parties could be joined and the administrative requirements of Title VII could still be met. Since the proscription charged in the complaint in Norman was a continuing one,

the Court said if, on remand, the District Court determined any parties to be indispensable, the plaintiff could then file a complaint before the EEOC embracing these alleged indispensable parties and administrative steps taken to process the complaints to the stage where the District Court would order a joinder; thus, through this procedure, the administrative requirements of Title VII would be met, all parties would be afforded a hearing, and the court could fashion full relief as was warranted under the evidence. 414 F.2d 84–85.

The rule was circumvented in Waters v. Wisconsin Steel Wks. of Internat'l Harvester Co., 427 F.2d 476 (7th Cir. 1970), cert. denied sub nom. United Order American Bricklayers v. Waters, 400 U.S. 911, where in a civil action alleging racial discrimination based for jurisdictional purposes on the Civil Rights Act of 1866, 42 U.S.C. § 1981 as well as Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–15, plaintiffs' complaint included a local union as party defendant which had not been a party charged before the EEOC.[3]  Plaintiffs were allowed to sue the local union directly under § 1981, having shown a reasonable excuse for failure to exhaust EEOC remedies, and the Seventh Circuit did not consider the district court's ruling concerning the applicability of Rule 19, Fed.R.Civ.P.  However, recently in LeBeau v. Libby-Owens-Ford Company, 484 F.2d 798 (7th Cir. 1973), where a Title VII action had been dismissed on the ground that the International union was a Rule 19 indispensable party, which could not be joined because it was not a party charged before the EEOC, the Seventh Circuit held that the International, in the circumstances there presented, was not an indispensable party.  Consequently, it affirmed the dismissal of the action as to International on the ground that International was not named as a respondent before the EEOC, and it reversed the judgment dismissing the suit against LOF and Local 19, finding a misapplication of Rule 19.

While there appears to be no Circuit opinion directly in point, several district courts have permitted joinder of parties, who had not been previously charged before the EEOC.  Bremer v. St. Louis Southwestern Railroad Company, 310 F. Supp. 1333 (E.D.Mo.1969); Torockio v. Chamberlain Mfg. Co., 51 F.R.D. 517 (W.D.Pa.1970); Reyes v. Missouri-Kansas-Texas Railroad Company, 53 F.R.D. 293 (D.Kan.1971); Pegues v. State Employment Service, 57 F.R.D. 102, 5 FEP Cases 289 (N.D.Miss.1972).  The rationale of these decisions is persuasive.

In *Bremer*, it was the court, sua sponte, who noted the absence of certain parties, and although neither had been charged before the EEOC, the court ordered them joined as necessary parties under Rule 19.  In the interest of uniformity, consideration of time, effort and expense involved in duplication, and with the possibility of inconsistent results, the court thought the entire matter should be disposed of in one proceeding.

The defendant sought joinder of the international union in *Torockio* and the court ordered it joined (under Rule 21) although the international had not been charged before the EEOC, reasoning that the Civil Rights Act of 1964 should not deprive defendants of their very valuable rights under the Federal Rules of Civil Procedure to have a resolution of all facts of the dispute in one proceeding.

The procedure in *Reyes* was quite similar to the case herein.  There the defendant had moved to dismiss the action for failure to join a local union (a party not charged before the EEOC) as a necessary party under Rule 19.  The court denied defendant's motion and allowed plaintiff to file an amended complaint naming the local union—relying exclusively on *Bremer*.

In *Pegues,* the district judge ordered that the Secretary of Labor be made a party defendant in the Title VII action under Rule 19.  The ruling was pursuant to the defendant's motion to dismiss for failure to name the Secretary as an

---

3. The district court had disposed of plaintiffs' Title VII count against the local by holding that the local could not be joined as a defendant since plaintiffs had not previously charged it with discriminatory practices before the EEOC.  The court further held the action against Harvester should also be dismissed since the local and individual white bricklayers could be adversely affected if plaintiffs' action continued, thereby making the local and the bricklayers parties which were needed for just adjudication under Rule 19.

indispensable party. Inasmuch as the relief sought allegedly would violate regulations promulgated by the Secretary prescribing policies and procedures with which all state employment agencies must comply in order to receive federal funds, the court found that, in the absence of the Secretary, complete relief could not be accorded those already parties in the action, and his absence would leave the employment service subject to substantial risk in incurring multiple or otherwise inconsistent obligations by reason of the interest that the Secretary had in that litigation. The court stated simply that the Secretary was subject to the process of the court and could be made a party without depriving the court of jurisdiction over the subject matter.

■■ The stormy legislative history of Title VII renders the intent of Congress in its administration far from clear. The two-fold purpose of bringing a charge before the EEOC is to give notice to the charged party and to provide a means for voluntary compliance and conciliation, expeditiously and inexpensively. Bowe v. Colgate-Palmolive Company, 416 F.2d 711, 719 (7th Cir. 1969). A complaint under Title VII cannot bypass the EEOC. The effect of a contrary holding would be virtually to elminate the Commission established by Congress to encourage fair employment practices. "Of course, the legislative compromise changed the concept from an enforcing-adjudicatory administrative agency to one in which the agency would conciliate, leaving the ultimate, final sanction to be judicial enforcement. As a part of the scheme such judicial enforcement was to be initiated by and at the hands of individual working grievants." Jenkins v. United Gas Corporation, 400 F. 2d 28, 31–32 (5th Cir. 1968). And, there are restrictions both in time and pre-conditions for court action.

■ However, we are not convinced that the value of conciliation supersedes the value of enforcement, to the end that after a charge has been processed before the EEOC and court action commenced, the district court is powerless to order joinder under Rule 19(a) and is further required to dismiss the action under the indispensable party provisions of Rule 19(b). Where, as here, the chartering International was an obscure party, requiring court action to determine whether or not its presence in the action was necessary for complete relief among those already parties, to deny joinder under 19 (a) would cripple the rights of the charging party as well as those of the party charged. Further, dismissal of the action under 19(b) would frustrate the intent of Congress in this type of case. Surely the means devised cannot be more important than the end envisioned.

We do not believe that the procedures of Title VII were intended to serve as a stumbling block to the accomplishment of the statutory objective. To expect a complainant at the administrative stage, usually without aid of counsel, to foresee and handle intricate procedural problems which could arise in subsequent litigation, all at the risk of being cast out of court for procedural error, would place a burden on the complainant which Congress neither anticipated nor. intended.

Appellant Evans filed a Charge of Discrimination with the EEOC against the Hotel which was her employer, Waitresses Local 507, and the Joint Board alleging violations of the Civil Rights Act of 1964.[4] She was timely advised by the Commission of its failure to obtain voluntary compliance and of her right to file suit. She then brought this action, naming the same parties as those charged before the EEOC in her complaint. It is our conclusion that appellant Evans exhausted her administrative remedies as anticipated by Congress.

It was through the motion of defendant Hotel that the absence of International was brought to the attention of the

4. The record indicates that although Waiters Local 781 and International were not formally charged before the EEOC, they had actual notice of the charges and subsequent Commission investigation.

District Court, and joined thereafter pursuant to Rule 19. We hold this action by the District Court within its jurisdiction and proper under the circumstances presented.

## II

## UNIONS SEGREGATED ON THE BASIS OF SEX

At all times pertinent to this litigation, appellant International maintained in the District of Columbia Waiters Local 781 and Waitresses Local 507. These locals supplied banquet waiters and waitresses to a number of establishments in the city, including 20 to 25 employed at the Sheraton Park Hotel, although the Hotel employed about twice as many regular banquet waiters as waitresses. Each local was represented at the Hotel separately by a different shop delegate who dealt with and presented grievances in the first instance to the banquet captain, who represented the Hotel.

While waiters and waitresses were all paid the same hourly rates for participation in varying types of duties, these rates varied according to the nature of the work. Alternating shifts, each composed of males and females, worked either breakfasts and lunches, or dinners, receptions and dances. Miscellaneous duties such as coffee breaks, setups and cleanups and the side jobs of filling salt and pepper shakers were performed at lower or even non-paying hourly rates.

A significant and substantial portion of total compensation came from dividing an obligatory 16 percent gratuity among the waiters and waitresses participating in a particular function. The most lucrative work involved serving bar and food receptions because the number of waiters and waitresses required for these functions was relatively small, while the bill and resulting gratuity received were relatively high.

The Hotel records disclosed that waiters as a group worked more hours than waitresses and received larger total hourly compensation and larger gratuities. The District Court found that this difference reflected decisions by the Hotel banquet captain, himself a member of Waiters Local 781, to assign waiters rather than waitresses to lucrative receptions, as well as other discrimination against waitresses, and that the favoritism shown regular banquet waiters over regular banquet waitresses was made possible because the locals segregated by sex were maintained and recognized. The District Judge stated:

"The discrimination in reception assignments is a classic example of the abuse inherent in maintaining and recognizing separate female and male locals for co-workers performing the same duties. It is inevitable in such a situation that not only will controversy and suspicion arise between males and females, but that the more dominant group, in this case the males, will gain privileges of various kinds. The failure of Local 507 to support plaintiff's justifiable official complaints concerning uneven and unfair assignments demonstrates the inability of a Janus-headed union to safeguard sex equality."

Appendix, p. 25, 5 FEP Cases 393, 395 (1972).

The District Court concluded that maintenance of the two sex-segregated locals [5] constituted a per se violation of 42 U.S.C. § 2000e–2(c), and no bona fide occupational qualification having been shown, defendants' practices in this case violated 42 U.S.C. § 2000e–2(a) and (c),[6] citing United States v. Internation-

5. On May 18, 1972, the membership of Locals 507 and 781 were combined into Waiters and Waitresses Union Local 781.

6. 42 U.S.C. § 2000e–2. Unlawful employment practices—Employer practices

(a) It shall be an unlawful employment practice for an employer—
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, condi-

al Longshoremen's Association, 460 F.2d 497, 4 FEP Cases 719 (4th Cir.), cert. denied, 409 U.S. 1007, 93 S.Ct. 439, 34 L.Ed. 2d 300 (1972). *ILA* is a case strikingly similar to the case at bar. There, the Fourth Circuit held that racially segregated unions constituted per se violation of 42 U.S.C. § 2000e–2(c)(2). Appellant International would distinguish *ILA* on the ground that the Court's underlying basis for holding that the maintenance of racially segregated locals constitutes a per se violation of Title VII was the Supreme Court's decision in Brown v. Board of Education, 347 U.S. 483, 74 S. Ct. 686, 347 U.S. 483 (1954), hence, *ILA* is limited to racial segregation. There being no *Brown* in the area of sex segregation, International says there is no reason to assume that the principles applicable to the effects of racial segregation apply to the effects of sex segregation.

We do not agree. The unions in *ILA* were segregated on the basis of race. The unions here were segregated on the basis of sex. The precise statute (42 U.S.C. § 2000e–2(c)(2)) involved in *ILA* is the one involved here. It specifically prohibits discrimination based on *race*, color, religion, *sex*, or national origin.

Moreover, in Frontiero v. Richardson, 411 U.S. 677, 687, 93 S.Ct. 1764, 1770, 36 L.Ed.2d 583 (1973), Mr. Justice Brennan noted that:

"[O]ver the past decade, Congress has itself manifested an increasing sensitivity to sex-based classifications. In Tit. VII of the Civil Rights Act of 1964, for example, Congress expressly declared that no employer, labor union, or other organization subject to the provisions of the Act shall discriminate against any individual on the basis of 'race, color, religion, *sex*, or national origin.' Similarly, the Equal Pay Act of 1963 provides that no employer covered by the Act 'shall discriminate . . . between employees on the basis of sex.' And § 1 of the Equal Rights Amendment, passed by Congress on March 22, 1972, and submitted to the legislatures of the States for ratification, declares that '[e]quality of rights under the law shall not be denied or abridged by the United States or by any State on account of sex.' Thus, Congress itself has concluded that classifications based upon sex are inherently invidious, and this conclusion of a coequal branch of Government is not without significance to the question presently under consideration." (Emphasis in the original.)[7]

Such recognition by the Supreme Court should quell any doubts that Con-

---

tions, or privileges of employment, because of such individual's * * * sex * * *; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's * * * sex * * *.

* * * * * *

Labor organization practices

(c) It shall be an unlawful employment practice for a labor organization—
(1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his * * * sex * * *;
(2) to limit, segregate, or classify its membership. or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's * * * sex * * *; or
(3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

7. The question before the Court was whether certain statutes, requiring a servi*cewoman* to prove that her husband was dependent upon her for over one-half of his support before she could obtain certain benefits which a servi*ceman* was allowed to claim for his wife without regard to whether she was in fact dependent upon him for any part of her support, constituted an unconstitutional discrimination against servi*cewomen* in violation of the Due Process Clause of the Fifth Amendment.

gress, in enacting Title VII found classifications based on sex inherently invidious. We think the District Court correctly held that maintenance of unions segregated on the basis of sex constitutes a per se violation of 42 U.S.C. § 2000e–2(c).

Having found intentional unlawful employment practices, 42 U.S.C. § 2000e–5(g) vests in the District Court discretionary authority to order, as part of the affirmative action necessary to obviate such unlawful employment practices, that the party responsible pay to the aggrieved person back pay damages calculated to restore such person to his or her rightful economic place. "The demand for back pay is not in the nature of a claim for damages, but rather is an integral part of the statutory equitable remedy, to be determined through the exercise of the court's discretion * * *." Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122, 1125, 2 FEP Cases 231 (5th Cir. 1969). In a case such as the one presented here, where employee initiative and choice are factors in the job assignment process, it seems that, consistent with traditional rules of jurisprudence, the burden of proof is on the claimant to establish her damages.

Our review of the record shows that from the evidence submitted the District Court was able to fix with a reasonable degree of accuracy, though not with exactitude, the approximate amount of Mrs. Evans' damages. We conclude that the District Court did not abuse its discretion in awarding Mrs. Evans $1,100 to be paid jointly by all defendants and $500 to be paid by the Hotel.

## III

### ATTORNEY'S FEES

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k) provides:

"In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person."

Pursuant to this authority, the District Court concluded that "[i]n addition to the damages specified, plaintiff will be awarded her costs and nominal attorney's fees of $1,000." Appendix, p. 6, 5 FEP Cases 396.

Mr. Whitworth Stokes, attorney for Mrs. Evans, then filed a motion for reconsideration of the court's ruling. He did not seek a specified amount for attorney's fees; however, he submitted to the District Court:

1. His affidavit as the attorney employed by plaintiff in this action;

2. An itemized expense schedule;

3. An exhibit (3½ pages) showing in chronological order the daily time spent by him, excepting from this the time for his services in the course of amending the complaint, unsuccessful motions for summary judgment, and the motion for reconsideration; and

4. A memorandum of points and authorities in support of his motion.

In his affidavit, Mr. Stokes listed 167¼ hours as spent by him from April 28, 1971, to December 4, 1972. In addition, the expenses recorded include: a legal assistant $701.25; a consulting fee of $360 to a statistical expert; and a law student $70 for research, totalling $1,131.25. In a responsive order, dated December 27, 1972, the District Court stated that "[t]he award of attorney's fees has been reconsidered and remains the same." Appendix, p. 36.

Appellant Evans has appealed the award of *nominal* attorney's fees of $1,000, claiming that it is inconsistent with the statute which contemplates *reasonable* fees, is inadequate in light of the difficulty of the case and the relief obtained, and constitutes an abuse of discretion by the trial judge.

Arguing that the $1,000 award is adequate, appellant International's position is that the Act gives the court discretion as to whether attorney's fees will be allowed, and if allowed, the amount thereof, and that a clear abuse of discretion not having been shown here, the award made should stand.

As both appellants recognize, when the question presented is the reasonableness of attorney's fees awarded by the court, abuse of discretion is the standard of review. Most recently this principle has been applied by the Fifth Circuit in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 7 FEP Cases 1 (1974), a Title VII class action.

In *Johnson* the attorneys, requesting fees in the amount of $30,145.50 for alleged 659.5 billable hours covering more than four years of litigation, submitted to the District Court: (1) a schedule of fees based on affidavits of counsel as to their time spent on the matter; (2) affidavits from the five attorneys employed by plaintiffs in the action; (3) three exhibits showing in chronological order the daily time spent by three of plaintiffs' attorneys; and (4) a memorandum of law in support of the motion. After a hearing, the District Judge determined that reasonable attorneys' fees in the area for the job performed were $13,500. He based this amount on a finding of 60 man days of work at $200 per day, consisting generally of six to seven productive hours, totalling $12,000, and allowed the two trial attorneys each $250 per day for three trial days, totalling $1,500. In making this award the District Judge said he was aware of the accomplishments of some of plaintiffs' attorneys, but that some of the services were rendered by attorneys at a time when they had been at the bar only a few years, and there was a relatively standard practice within that community with respect to the age and experience of attorneys and the compensation involved therein.

On appeal, the Fifth Circuit vacated the judgment and remanded to the District Court for reconsideration. Judge Roney, speaking for the Court, pointed out that as part of its obligation to make Title VII work, the Fifth Circuit has liberally applied the attorney's fees provision of Title VII, recognizing the importance of private enforcement of civil rights legislation. In reviewing the award under the abuse of discretion standard, the difficulty which the Court had with the District Court order was that the judgment did not elucidate the factors which contributed to the decision and upon which it was based. In particular, the Court saw no correlation between the judgment to the facts and figures submitted by plaintiff, nor to the minimum fee scale in the community; there was no differentiation made by the District Court between experienced and non-experienced attorneys; and, the order left unexplained between 239.5 to 299.5 of the 659.5 hours claimed. "Whether they reflected duplicated effort among the attorneys, improperly charged hours, time deemed unessential, or were merely overlooked is not answered in the order." 488 F.2d 717, 7 FEP Cases 3.

Thus, the Court set up the following guidelines to better enable District Courts to arrive at just compensation:

1. Time and labor required.
2. The novelty and difficulty of the questions.
3. The skill requisite to perform the legal service properly.
4. The preclusion of other employment by the attorney due to acceptance of the case.
5. The customary fee.
6. Whether the fee is fixed or contingent.
7. Time limitations imposed by the client or the circumstances.
8. The amount involved and the results obtained.
9. The experience, reputation and ability of the attorneys.
10. The "undesirability" of the case.

11. The nature and length of the professional relationship with the client.

12. Awards in similar cases.

488 F.2d 717, 718, 719, 7 FEP Cases 3, 4.

The same type of evidence was submitted in the present case by appellant Evans' attorney regarding the fee claim as that submitted in *Johnson*. Yet, in the Memorandum constituting his findings of fact and conclusions of law, the District Judge herein said nothing whatsoever reflecting on his determination of the amount of the fee. His sole reference to the matter was that plaintiff would be awarded "nominal attorney's fees of $1,000."

We align ourselves with the guidelines set out by the Fifth Circuit in *Johnson*. We believe that a meaningful review requires a record that elucidates the factors that contributed to the fee decision and upon which it was based. Certainly it is not conducive to an appropriate appellate review where, as here, the reviewing tribunal is completely in the dark as to what the trial judge found concerning the time and labor involved, the rate of compensation, and the aspects he may have deemed of significance. Accordingly, we remand the case to the District Court for reconsideration of its award of attorney's fees.

Two other observations need to be made in connection with the remand of this case on the fee issue.

First, the District Court refused to certify the case as a class action.[8] The correctness of this ruling is not involved in this appeal. However, in awarding attorney's fees in a Title VII action to a successful plaintiff, we cannot perceive any real distinction between a class discrimination based on sex and an individual discrimination based on sex.[9] "[D]iscrimination [based on sex] is by definition a class discrimination. If it exists, it applies throughout the class. This does not mean, however, that the effects of the discrimination will always be felt equally by all the members of the * * * class. * * * But although the actual effects of a discriminatory policy may thus vary throughout the class, the existence of the discriminatory policy threatens the entire class." Hall v. Werthan Bag Corporation, 251 F. Supp. 184, 186 (M.D.Tenn.1966). Moreover, Title VII is so structured that enforcement of nondiscrimination in employment is left largely to private action, and "[w]hether in name or not, the suit is perforce a sort of class action for fellow employees similarly situated." Jenkins v. United Gas Corporation, 400 F.2d 28, 33 (5th Cir. 1968).[10]

8. In Paragraph II of her amended complaint filed September 28, 1971, Mrs. Evans stated that she was bringing this action on her own behalf and on behalf of other persons similarly situated pursuant to Rule 23(b)(2), Federal Rules of Civil Procedure. Mrs. Evans moved on June 2, 1972, for an order declaring the case maintainable as a class action. In a Memorandum and Order filed June 29, 1972, the District Court denied the motion.

9. Employer unlawful employment practices include discrimination on the basis of sex "against any individual with respect to his compensation, terms, conditions, or privileges of employment" and classifying employees on the basis of sex "in any way which would deprive * * * any individual of employment opportunities or otherwise adversely affect his status as an employee." 42 U.S.C. § 2000e–2(a). Labor organizations unlawful employment practices include discrimination on the basis of sex, "[classifying] its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's * * * sex," or "to cause or attempt to cause an employer to discriminate against an individual in violation of this section." 42 U.S.C. § 2000e–2(c).

10. The Fifth Circuit has further held that a charging party may even be aggrieved by employment practices to which he is not immediately subject. Carr v. Conoco Plastics, Inc., 423 F.2d 57 (5th Cir. 1970), aff'd on the opinion of the District Court, 295 F. Supp. 1281 (N.D.Miss.1969).

In addition, while recognizing the merger of Waitresses Local 507 and Waiters Local 781, we also take cognizance of the fact that this merger did not take place until after appellant Evans complained to the EEOC and her subsequent institution of this lawsuit. Although the merger rendered injunctive relief unnecessary, we believe the lawsuit acted as a catalyst, prompting the defendant unions to take action in compliance with the requirements of Title VII. Parham v. Southwestern Bell Telephone Co., 433 F.2d 421 (8th Cir. 1970); Dobbins v. Local 212, International Bro. of Elec. Wkrs., 292 F.Supp. 413 (S.D.Ohio, W.D.1968). Further, Mrs. Evans prevailed in her contentions of discrimination based on sex prior to the May 1972 merger. In this regard she performed a valuable public service in bringing this action, entirely consistent with the intent of Congress. Newman v. Piggie Park Enterprises, 390 U. S. 400, 401–402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). We think the trial court was correct in recognizing Mrs. Evans' entitlement to an attorney's fee but to satisfy the statutory mandate a fee award must be reasonable. In remanding this case, we express no opinion as to the correctness of the amount of attorney's fees awarded.

### CONCLUSION

We affirm the judgment of the District Court except for the award of attorney's fees. We vacate that award and remand the case for reconsideration of the attorney's fees in the light of this opinion, and for the entry of an order fixing a reasonable fee which reflects the considerations which led to it.

So ordered.

ROBB, Circuit Judge (concurring in part, dissenting in part):

I concur in Parts I and II of the majority opinion, but I would affirm the award of an attorney's fee.

In the exercise of his discretion the experienced district judge set a fee which he considered reasonable. He was of course familiar with the time-honored guidelines set out in the majority opinion and I must presume that he took them into consideration. I see no indication that he abused his discretion, or any reason to call upon him for an explanation. A district judge should not be treated as a special master who must give detailed explanation of his discretionary conclusions.