588 F.2d 409
 18 Fair Empl.Prac.Cas. 1770, 18 Empl. Prac.
Dec. P 8729
Catherine BROGAN, Plaintiff-Appellant,
v.
WIGGINS SCHOOL DISTRICT and/or Board of Education,
Administrators (Re: District50), and Colorado
State Board of Education, Defendants-Appellees.
 No. 77-1526.
 United States Court of Appeals,
Tenth Circuit.
 Submitted Oct. 24, 1978.
Decided Dec. 13, 1978.
 
 Catherine Brogan, pro se.
 George A. Epperson, Donald F. McClary, Edward L. Zorn and Douglas R. Vannoy, Fort Morgan, Colo., for defendants-appellees Wiggins School District and/or Board of Education, Administrators (Re: District 50).
 J. D. McFarlane, Atty. Gen., David W. Robbins, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., and Sharon S. Metcalf, Asst. Atty. Gen., Appellate Section, Denver, Colo., for defendants-appellees Colorado State Board of Education and the individually-named members thereof.
 Before SETH, Chief Judge, and BARRETT and DOYLE, Circuit Judges.
 WILLIAM E. DOYLE, Circuit Judge.
 
 
 1
 In this action, which was filed in District Court on April 20, 1976, the defendants were the State Board of Education and Wiggins School District. Plaintiff, a former employee of the Wiggins School District, alleged that the defendants had conspired to deny her rights guaranteed by Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e Et seq., and 42 U.S.C. § 1983. The defendants Colorado State Board of Education and the Wiggins School District were alleged to have been guilty of discrimination in connection with her effort to obtain a Type D certificate for school administrator and in terminating her employment with the Wiggins School District in 1968.[1]
 
 
 2
 In the years 1966-67 and 1967-68, plaintiff worked for the Wiggins School District as a counselor. Mrs. Brogan had not been given tenure, and in 1968 she was terminated. At this time she was simply given notice that her contract would not be renewed. In giving this notice the District complied with the requirements of state law.
 
 
 3
 On September 15, 1972, plaintiff filed her complaint with the Equal Employment Opportunity Commission (EEOC). This complaint was dismissed on July 8, 1975, following which she received a so-called "right to sue" letter. In her complaint filed with the EEOC, plaintiff had alleged that the denial of her application for a Type D certificate was based on sex discrimination.
 
 
 4
 The essence of her claim here is that a male with no greater qualifications than those possessed by her was hired upon her dismissal. She contends that sex discrimination was the reason for the denial of her applications for the Type D certificate. This occurred in 1967, and, finally, in 1973. It would appear that the denial of these applications is the important thrust of her action. She claims that this denial by the State Board constituted a violation of her rights under Title VII and of her constitutional rights as well.
 
 
 5
 Defendants have asserted that the actions, if any, are barred by the statute of limitations, and, further, that the plaintiff failed to complete the requirements and prerequisites for a Type D certificate, which requirements are set forth in the Colorado statute, C.R.S.1973 § 22-60-106(5). Defendants assert that plaintiff did not properly complete the application process in 1973 or even file a formal application in 1967.
 
 
 6
 A further defense is that termination was permissible because plaintiff had no vested right to be employed inasmuch as she was a non-tenured person under C.R.S.1973 § 22-63-112, and that proper procedures under C.R.S.1973 § 22-63-110 were observed.
 
 
 7
 The trial court granted summary judgment on May 2, 1977, saying that the most nearly relevant state statute of limitations applied in § 1983 cases. The court cited Johnson v. Railway Express Agency, 421 U.S. 454 (1975). The court applied C.R.S.1973 § 13-80-110, a six-year statute of limitations. The suit was filed in 1976, and hence the 1967 claims based on § 1983, were barred.
 
 
 8
 The court ruled that the 1967-68 claims, which were based on Title VII, were lacking in merit. At the same time, the trial court refused to give the 1972 amendments retrospective treatment. The reasoning was that claims arising before the effective date of the amendments applicable to public employers, namely March 24, 1972, had to be of a continuing nature in order for retroactive application to be given. Cleveland Bd. of Ed. v. LaFleur, 414 U.S. 632, 638 n.8, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974). Cf. E. E. O. C. v. University of New Mexico, 504 F.2d 1296 (10th Cir. 1974).
 
 
 9
 The trial court also determined that the Title VII claims based on the 1973 actions could not be brought because here there had not been an exhaustion of administrative remedies. In this respect it is to be noted that the complaint shows that EEOC review was had for the 1967 denial only. The EEOC claim was filed in 1972, and the alleged discriminatory action here occurred in 1973. EEOC review is essential to judicial action on a Title VII claim. Hence the court was correct in dismissing the claim. United Air Lines, Inc. v. Evans, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); Fix v. Swinerton and Walberg Co., 320 F.Supp. 58 (D.Colo.1971). The EEOC cannot be bypassed where Title VII is invoked. See Evans v. Sheraton Park Hotel, 164 U.S.App.D.C. 86, 503 F.2d 177 (1974).
 
 
 10
 The § 1983 claim involving the denial of the 1973 application for a Type D certificate is addressed only to the State Board of Education. The trial court relied on Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and Coopersmith v. Supreme Court, State of Colorado, 465 F.2d 993 (10th Cir. 1972). This claim, however, has no merit because it seeks money damages (rather than injunctive relief, for example). Since the Colorado State Board of Education is not a suable entity in a money damage action, the trial court was correct in its ruling.
 
 
 11
 As to the above issues, it is clear that there were no genuine issues of material fact, and since the law did not support the claims, summary judgment was proper. Ando v. Great Western Sugar Co., 475 F.2d 531 (10th Cir. 1973).
 
 
 12
 Trial was held on the issue whether the State Board acted in violation of § 1983, whereby injunctive relief would have been proper. The relief sought here was to obtain any unfavorable or derogatory information which was located in her file and have it expunged.
 
 
 13
 Following the trial, the court entered judgment, holding that plaintiff had not been the victim of sex-based discrimination. It found that the plaintiff had not met the requirements necessary to receive the institutional recommendation required as a part of the application for a Type D certificate. The court also found that the plaintiff had failed to complete an essential part of the application, which called for verification of employment from the applicant's last school administrator. Plaintiff was given ample time to correct this deficiency, but she failed to do so.
 
 
 14
 The trial court ruled that the evidence demonstrated that the denial of the certificate was not the result of sex-based discrimination, but was a direct result of the plaintiff's failure to complete the application and failure to meet the minimum qualifications required for issuance of a Type D certificate. In other words, she had failed to establish that she was qualified.
 
 
 15
 On this appeal plaintiff maintains that the trial court erred:
 
 
 16
 In its failure to consider all of the evidence.
 
 
 17
 In its application of the statute of limitations.In finding a lack of discrimination.
 
 
 18
 The main propositions which are presented to us for review are, First, whether the trial court applied the proper statute of limitations; Second, whether the trial court erred in its failure to find that discrimination existed, that is to say, whether she established a Prima facie case within the requirements of § 1983, Supra; And, Third, whether she met her burden of proof.
 
 I.
 
 19
 In applying the state limitations statute the trial court looked to Johnson v. Railway Express Agency, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), where the Supreme Court ruled that inasmuch as there was no statute of limitations provided under the federal law, the state statute would apply to a cause of action under § 1981. 421 U.S. at 462, 95 S.Ct. 1716. The Court determined that in cases having to do with discriminatory termination of employment, the cause accrues on the date of discharge. 421 U.S. at 462, 95 S.Ct. 1716.
 
 
 20
 Unquestionably the trial court was correct in its application of the Johnson case. See Crosswhite v. Brown, 424 F.2d 495 (10th Cir. 1974), which held that the last overt act in furtherance of the violation alleged is the time at which the statute commences to run. Here it would have been notification of termination in 1968.
 
 
 21
 This court in Zuniga v. Amfac Foods, Inc., 580 F.2d 380 (10th Cir. 1978), held that in § 1981 actions the six-year limitations period set forth in § 13-80-110 of the Colorado Statutes Ann. applied. The reasoning was that in § 1981 and in the limitations statute cited, the goal in each instance is protection of rights arising out of contracts. Section 1983, however, is somewhat broader. Nevertheless, since it seeks to protect fundamental rights and inasmuch as there would appear to be a choice between the two-year and six-year statute, the latter would seem proper, and, therefore, we approve the use of the six-year statute by the trial court here.
 
 II.
 
 22
 There was no evidence in the case at bar that any discriminatory purpose or intent was present in connection with the denial of the Type D certificate. Rather, it was the lack of qualification and the failure to even prepare the application properly that was the basis for the court's judgment. The trial court pointed this out and concluded that the denial was not the result of sex discrimination on the part of the defendant.
 
 
 23
 The Supreme Court has in recent times ruled that purposefulness is an essential element in civil rights actions of the kind that we have here. See Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), and See also Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).
 
 
 24
 In the case at bar the evidence is that the state was simply following its well-established procedures for processing the Type D certificate application. This is apparent from the correspondence between the appellant and the state officials. See the Appendix.
 
 
 25
 Putting to one side all of the procedural deficiencies here, and also our sympathies for appellant's plight, we must conclude that she has made no substantive showing that she was qualified to receive the certificate which she sought, nor has she shown that the denial of her application was in any way based upon discrimination. That being so, the trial court cannot be held to have erred in finding that a violation of § 1983 was not established in connection with the denial of the Type D certificate in 1973.
 
 
 26
 Accordingly, the judgment of the district court is affirmed.
 
 APPENDIX
 
 27
 Defendants' exhibits 9a and 9b are the two pages of a letter sent to Mrs. Brogan by Dr. Otto Ruff who was, in 1973 and at the date of trial, Supervisor of Teacher Education and Certification for the Colorado Department of Education. Dr. Ruff was responsible for processing and reviewing all applications for certification received by the Department of Education.
 
 
 28
 In the letter, dated May 21, 1973, Ruff gives to Mrs. Brogan the following information:
 
 
 29
 The "Institutional Recommendation" is now a requirement for administrative certification as it has been since December 31, 1957, as indicated in the materials you sent.
 
 
 30
 If you do not now qualify for the institutional recommendation, I suggest that you confer personally with Dr. Arthur Partridge, Chairman of the Department of Educational Administration, College of Education, University of Northern Colorado, Greeley, and ask for an advisement. Dr. Partridge will be happy to give you in writing the requirements that must be met to qualify for the needed recommendation for certification. You should then complete the requirements at the earliest possible time, since some of your credits are getting quite old and may need to be updated.
 
 
 31
 A subsequent letter, sent by Dr. Partridge to Mrs. Brogan on July 19, 1973, indicates that Mrs. Brogan had made little progress since receiving the letter from Dr. Ruff. The text of that letter, in its entirety, reads as follows:
 
 
 32
 You have on occasion alleged that we have discriminated against you in the matter of administrative certification. For the record, I want to remind you that you were most recently admitted to our Ed.S. program on March 1, 1973. On March 12, 1973(,) you had a departmental interview. On April 3, 1973, I wrote you that I would be your advisor and asked you to schedule an appointment so that we could plan your program.
 
 
 33
 You have never made any effort to schedule that appointment and, to the best of my knowledge, you have never started the Ed.S. program. In addition, I have no record that you have ever taken the Graduate Record Examination Aptitude Test.
 
 
 34
 Under the policies of the Graduate School, our Department cannot officially clear you for continuation in the Ed.S. program until we have the GRE scores and until you have completed at least one full quarter in the program. Under the policies of this Department, until you have been officially "screened," I cannot even consider a recommendation for provisional endorsement.
 
 
 35
 I have communicated all this information on previous occasions. I want the record to show, however, that you have not started the Ed.S. program four and a half months after your admission to the program. If you have not started the program within the next year, we shall close your file.
 
 
 36
 This letter indicates that the authorities were aware of the deficiencies in Mrs. Brogan's record and were acting to inform her thereof so that she might extirpate the same.
 
 
 37
 These deficiencies are further highlighted in Defendants' exhibit L, a document from the University of Northern Colorado's College of Education, Department of Educational Administration.
 
 
 38
 In this paper it is set out that the University of Northern Colorado has established that
 
 
 39
 the basic requirement for the Colorado Type D Superintendent's certificate is completion of at least the specialist degree program in general school administration or the equivalent. Although the State of Colorado requires a minimum of three years of teaching experience prior to the issuance of any administrative certificate, completion of this degree program insures institutional recommendation.
 
 
 40
 This document enumerates the courses necessary for the degree and notes those which the applicant has already completed. An applicant must complete 19 of 20 required courses (an option is presented which allows the applicant to choose two out of the three courses available in the "Foundations of Education.") There is a total of 67 credit hours required for the degree.
 
 
 41
 This paper shows that Mrs. Brogan had, one and one-half months after her admission into the program, completed five courses for a total of 16 credit hours. Moreover, these five courses were all ones that she had taken in 1965.
 
 
 42
 It is thus clear that Mrs. Brogan had not, in 1973, qualified for the degree which was a prerequisite to eligibility for the Type D certificate.
 
 
 
 [1]
 A Type D certificate such as plaintiff-appellant sought authorizes the holder thereof to become an administrator of the highest type, that is, principal or vice-principal of a school, etc., or superintendent of a district