**INTERNATIONAL COMMISSION ON ENGLISH IN the LITURGY,**
Appellant,

v.

**Peter N.G. SCHWARTZ, Appellee.**

**Nos. 88–766, 88–1152 and 88–1327.**

District of Columbia Court of Appeals.

Argued Feb. 7, 1990.
Decided May 3, 1990.

Philip M. Musolino, Washington, D.C., for appellant.

David P. Blackwood, with whom Richard W. Luchs, Washington, D.C., was on the brief, for appellee.

Before NEWMAN, BELSON and TERRY, Associate Judges.

BELSON, Associate Judge:

This appeal arises from a dispute between a landlord and tenant of commercial space. After trial without jury, the trial court ruled that the tenant, International Commission on English in the Liturgy (ICEL), had wrongfully abandoned the premises before the expiration of the lease, and awarded damages to the landlord, Schwartz. ICEL appeals, contending that the trial court committed the following reversible errors: ruling that another tenant's interference with ICEL's use and enjoyment of the premises did not amount to constructive eviction by the landlord; concluding that the landlord fulfilled his duty to mitigate damages; awarding attorneys' fees to the landlord; and striking ICEL's jury demand. We affirm.

ICEL is a non-profit organization which provides translations of the liturgical books of the Roman Catholic Church. According to ICEL, its work requires a scholarly and professional environment. In 1983, ICEL and Schwartz's assignor executed a five-year lease agreement for commercial space in the building located at 1234 Massachusetts Avenue, Northwest. Schwartz subsequently purchased the building and was assigned the lease. During its occupancy, ICEL had intermittent problems with cleaning and repair services provided by the landlord. On September 1, 1984, the Dawson Early Learning Center leased and took possession of premises across the hall from ICEL. Several witnesses testified that the

occupants of the child care center caused some noise and disruption, although ICEL's executive secretary acknowledged that ICEL was never greatly inconvenienced by the child care center during the time that both ICEL and the child care center occupied the building. On October 4, 1984, ICEL wrote to the landlord's management company stating that the landlord had breached the terms of the lease by renting to the child care center, and that ICEL was terminating its lease as of December 31, 1984. In November, ICEL informed Schwartz that it had entered into a new lease for premises at a different location and would be terminating the lease on January 31, 1985. ICEL vacated the premises on January 27, 1985. In October 1986, after some renovation, Schwartz relet the premises vacated by ICEL. Schwartz's suit against ICEL sought back rent and rent that was to accrue through 1988 pursuant to the terms of the lease. The court found in favor of Schwartz, awarding him as damages the amount of money he would have received as rent for the balance of the lease term, offset by the amount of rent to be received from the new tenant over the balance of that term.

 We affirm the trial court's ruling that ICEL was not constructively evicted from the premises by virtue of disruptions caused by the child care center.[1] To constitute constructive eviction, "the landlord must have done, or be responsible for, some act of a permanent character with the intention and effect of depriving the tenant of the enjoyment of the demised premises or a part thereof." *Hughes v. Westchester Dev. Corp.*, 64 App.D.C. 292, 293, 77 F.2d 550, 551 (1935). "[A] landlord is not liable to his tenants for interference by third persons with the tenant's possession, absent any wrongful acts or omissions by the landlord." *Rittenberg v. Donohue Constr. Co.*, 426 A.2d 338, 342 (D.C.1981). Whether the landlord performed an act with the intent to evict the tenant is a question of

fact for the trial court. *Hughes*, 64 App. D.C. at 293, 77 F.2d at 551.

Here, the trial court found that the landlord did not intend to deprive ICEL of its use and enjoyment of the premises by leasing space in the building to the child care center. This finding must be sustained on appeal as it is neither plainly wrong nor without evidentiary support. *See* D.C.Code § 17–305(a) (1989 Repl.). The mere letting of the premises to the child care center does not make the landlord responsible for whatever interference may have been caused by invitees of the child care center, and there was nothing in the lease which restricted the landlord's ability to lease other premises in the building. *Cf. Dietz v. Miles Holding Corp.*, 277 A.2d 108, 110 (D.C.1971) (lessee could not hold landlord responsible for interference caused by "hippie people" frequenting anti-Viet Nam war organizations in landlord's building absent allegation that the "hippie people" were acting under landlord's direction or with its knowledge and permission).

It was incumbent upon ICEL to complain to the landlord and to give the landlord an opportunity to cure the problem if the child care center was in fact interfering with ICEL's use and enjoyment of its premises. Because ICEL did not complain prior to giving notice that it was terminating the lease, this aspect of the record provides an additional ground for the trial court's ruling that the allegedly disruptive activities were not attributable to the landlord. *See* RESTATEMENT (SECOND) OF PROPERTY § 6.1 comment e (1977) (lessee cannot hold landlord responsible for interference caused by another tenant unless landlord fails to eliminate the interference promptly after a request to do so). In sum, therefore, the trial court's determination that the landlord did not constructively evict ICEL is supported by the record and not contrary to law.

---

1. We summarily reject ICEL's argument that the landlord's failure to provide cleaning and repair services also justified its termination of the lease. The trial court found that these problems were "inconsequential" and were not ICEL's motivation for terminating the lease. These findings are not clearly erroneous and therefore will not be disturbed on appeal. *See District of Columbia v. Burlington Apartment House Co.*, 375 A.2d 1052, 1055 (D.C.1977).

ICEL also contends that Schwartz did not fulfill his duty to mitigate damages because he renovated the space vacated by ICEL and sought higher rent. We do not agree. When tenants wrongfully abandon premises, landlords have three options:

[1] [the landlords] could accept the abandonment and thereby terminate the lease; [2] they could, without acquiescing in the abandonment, re-enter and relet and hold the tenants for any deficiency in rent; or [3] they could refuse to re-enter, allow the premises to remain vacant, and hold the tenants for the full rent.

*Truitt v. Evangel Temple, Inc.*, 486 A.2d 1169, 1172 (D.C.1984) (quoting *Cohen v. Food Town, Inc.*, 207 A.2d 122, 124 (D.C. 1965)).

Here, Schwartz did not acquiesce in ICEL's abandonment, and instead notified ICEL that he intended to hold ICEL to the terms of the lease. His renovation of the premises (described as "cosmetic" in ICEL's brief) and effort to secure another tenant without waiting for the expiration of ICEL's lease did not serve to release ICEL from rent obligations. In *Baskin v. Thomas*, 56 App.D.C. 310, 12 F.2d 845 (1926), the United States Court of Appeals for the District of Columbia stated, "[T]he entry of the plaintiff upon the premises for the purpose of refitting it, and the plaintiff's effort to secure another tenant without waiting for the expiration of the defendant's lease, do not serve to release the defendant from the obligations of the lease." *Id.* The trial court here found in that regard that Schwartz "made reasonable efforts to relet the premises and mitigate" ICEL's deficiency. The trial court went on to note that the evidence indicated that a "soft" market existed at the time in question, and that Schwartz adopted marketing proposals of two independent brokers in making improvements to the premises and common area, listing the property and seeking higher rent.[2] We are satisfied that these findings are supported by the record. In determining damages, the trial court properly offset ICEL's rent liability with the amount of the increased rent to be received from the new tenant over the balance of ICEL's lease term. *See Truitt*, 486 A.2d at 1172.

We are not persuaded by ICEL's contention that the trial court's award of attorneys' fees pursuant to a provision in the lease was improper because Schwartz had elected a contingent fee agreement with his attorney. In *Central Fidelity Bank v. McLellan*, this court stated that "where a contractual agreement expressly provides for the payment of attorney's fees, the trial court's discretion is limited to ascertaining what amount constitutes a 'reasonable' fee award." 563 A.2d 358, 360 (D.C.1989). *Frazier v. Center Motors, Inc.*, 418 A.2d 1018, 1025 (1980), adopts the 12 factors set forth in *Evans v. Sheraton Park Hotel*, 164 U.S. App. D.C. 86, 96–97, 503 F.2d 177, 187–88 (1974), to assist the trial court in determining the reasonableness of the fee. Determination of a reasonable fee award, however, is ultimately within the discretion of the trial court, and this court will reverse only for an abuse of that discretion. *See Evans v. Sheraton Park Hotel, supra*, 164 U.S.App.D.C. at 96, 503 F.2d at 187. Here, the trial court explicitly stated that it considered the 12 factors of *Frazier* and reduced the potential award from the $24,825 requested by Schwartz to $19,259. We find no abuse of discretion.

Finally, ICEL argues that the trial court erred in granting Schwartz's motion to strike defendant's jury demand because Schwartz was not an original party to the lease agreement. We find this argument unpersuasive. In the lease agreement, ICEL waived its right to a jury trial. The original lessor assigned the lease to Schwartz. Thus, Schwartz had all the rights of the assignor. *See* D.C.Code

---

**2.** It may be that in an appropriate case a line should be drawn limiting the degree of renovation or improvement a landlord can complete without acquiescing in the abandonment. For example, such a line might be drawn beyond normal repair and refurbishing effected to make premises attractive to potential new tenants, but short of substantial improvements that significantly increase the value of the rental property. On the record before us, however, and in view of the trial judge's findings, this case does not require us to fix such a line.

§ 45–1430 (1986 Repl.); *Word v. Tiber Island Coop. Homes, Inc.*, 491 A.2d 521, 523 (D.C.1985). These rights included the right to hold ICEL to its waiver of a jury. For the foregoing reasons, the judgment appealed from is hereby

*Affirmed.*